THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SKIPPER MERLE AHLBERG, Defendant-Appellant.

(No. 71-126;

Third District—September 24, 1973.

James Geis, Deputy Defender, of Ottawa, (Steve Hurley, Assistant Appellate Defender, of counsel,) for appellant.

Jay H. Jannssen, Assistant State's Attorney, of Pekin, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

After trial by jury in the circuit court of Tazewell County, Skipper Merle Ahlberg, the defendant, was found guilty of voluntary manslaughter and he was thereafter sentenced to a term of not less than 16 nor more than 20 years in the penitentiary.

The defendant's conviction and incarceration stems from a series of events which commenced on Friday evening, October 16, 1970. On the evening of this date the defendant, being a teacher and coach in the Mackinaw school system, made arrangements to meet his wife Jan at

the school's annual homecoming football game. Jan failed to keep this appointment and after the game the defendant returned to his home. The defendant's wife and the two minor children of their marriage never returned home on this particular night. Sometime between 2:00 A.M. and 3:00 A.M. on October 17th the defendant discovered the clothes closets in the home had been almost entirely emptied.

The defendant's testimony is that he almost continuously looked for his wife and children when they remained absent from the home. On Monday morning at approximately 8:00 A.M. the defendant called his wife's place of employment, the General Electric Plant in Bloomington. At this time the defendant talked to her, but she refused to tell him where she and the children were staying but instead informed him to get an attorney since she had filed for a divorce.

At 4:00 A.M. on Wednesday, October 21, the defendant received a call from his wife. At this time they talked for approximately an hour and a half. The bulk of the conversation consisted of defendant's efforts in trying to persuade his wife to return home; however, she advised him that he was to be in her attorney's office in Eureka at 9:15 A.M. for a consultation.

The defendant met with his wife and her attorney at the appointed time and consented to a separation agreement. After this meeting he drove his family to Mackinaw, left the children with a baby sitter and then took his wife to her place of employment. The same evening at approximately 5:15 or 5:30 P.M. the defendant called at his wife's place of employment to take her home but was informed that she had already gone home because of illness. The defendant returned to Mackinaw, went to a store accompanied by his children and then went to his home. On arriving there he found present his wife and a friend, Gerald Sweckard. Upon the defendant attempting to use the telephone an argument ensued and he was informed by his wife that her permission was needed if he was to use the phone. Other remarks were made by the defendant's wife which he testified as "weren't very nice" and the friend Sweckard then departed.

The defendant testified that his wife informed him that she was tired of being the nice school teacher's wife and that she was unhappy living in Mackinaw. Also he testified that he was informed by his wife that he had never satisfied her sexually and that she had found an older man who could love her and the two children more than he could and that she was going to get a divorce. The defendant's testimony is that from this point of time until he was later found driving on a country road he has no recollection of his actions.

Testimony from neighbors of the defendant establish the fact that he

dragged his wife from their home, beat, kicked and stomped her causing injuries from which she later died.

The defendant was indicted for the crime of murder but as we have previously stated was found guilty of the crime of voluntary manslaughter and in this appeal he raises as his first issue that the evidence in the record does not support a conviction for voluntary manslaughter beyond a reasonable doubt.

It is the defendant's position that the evidence adduced during the course of his trial indicates that he was either guilty of murder or he was not guilty by reason of insanity since evidence of the type of provocation necessary to support a voluntary manslaughter conviction is not present.

Section 9—2 of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1969, ch. 38, par. 9—2) specifically sets forth the elements of the crime of voluntary manslaughter. The pertinent part of this statute provides:

> "9—2(a). A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a *sudden and intense passion resulting from serious provocation by*
>
> (1) The individual killed * * *
>
> *Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.*" (Emphasis supplied.)

There is ample evidence in the record to support a finding that the defendant was acting under a sudden and intense passion when he committed the acts which caused the death of his wife. The defendant, however, contends that such passion did not result from the type of provocation on the part of the victim which is necessary to sustain a verdict that he is guilty of the crime of voluntary manslaughter. In substance the defendant argues that words alone from a victim will not constitute the provocation necessary to support the crime of which he was convicted. It is the defendant's view that physical contact between the defendant and his wife, or threats by the wife to the defendant have to be present in the evidence in order to sustain his conviction for voluntary manslaughter.

■■ Our reviewing courts have in many cases established the proposition that mere words are insufficient provocation within the meaning of that term as an element of voluntary manslaughter. (See *People v. Thompson,* 11 Ill.App.3d 752, 297 N.E.2d 592; *People v. Lowe,* 122 Ill. App.2d 197, 258 N.E.2d 370; *People v. Pecora,* 107 Ill.App.2d 283, 246 N.E.2d 865.) In the cited case of *Thompson* the defendant was indicted for the murder of his wife, however, the trial judge sitting without a jury found him guilty of voluntary manslaughter. In reversing this con-

viction the reviewing court need not have been concerned with the question of what constituted provocation since it is set forth in the court's opinion that there was no argument between the defendant and his wife, the victim, and the opinion further stated, "There is nothing in the record to indicate that defendant was acting under a 'sudden and intense passion resulting from serious provocation'." In *Thompson* the record is barren of any evidence of any conduct of any kind or nature on the part of the deceased that could be imputed to have caused provocation.

In the cases of *Lowe* and *Pecora* which we cite, we find the situation existing where one convicted of murder is seeking to have the conviction reduced to the crime of voluntary manslaughter. In these cases the reviewing courts adhered to the well established rule that "mere words" can never be sufficient to support voluntary manslaughter.

In the instant case we have a defendant who was charged with murder but found guilty of voluntary manslaughter. Unlike the factual situation in *Thompson,* the defendant by his own testimony stated that his wife informed him that he had never satisfied her sexually, that she had found an older man who could love her and that she was going to get a divorce. It is further the defendant's testimony that after hearing these remarks he did not remember anything until he later found himself driving on a country road, however, in the interim in the presence of witnesses he dragged his resisting wife from their home and killed her by beating, stomping and kicking her.

We are inclined to believe that had the defendant been convicted of murder he would now be before us asking that his crime be reduced to voluntary manslaughter. Having escaped a guilty of murder conviction he now asks that we set aside a voluntary manslaughter conviction even though by his own testimony the words of his wife were such as to cause him to lose all control of himself including his memory. To grant the request of the defendant would make a mockery of the law. Set rules, formulas and standards are strongly embedded in our legal system but no more so than logic and common sense. To follow unequivocally the rule that "mere words are insufficient to cause the provocation necessary to support a finding of guilt of voluntary manslaughter would be in keeping with precedent and an established rule; however, it would be a direct refutation of logic and a miscarriage of justice. We reach this conclusion for it is not incumbent on us to determine what could or did provoke the defendant into a state of intense passion, for by his testimony he made such determination. It was the cumulative effect of his wife's absence, his fruitless searching for her whereabouts, her retention of counsel for the purpose of obtaining a divorce, and her

slurring remarks as to his masculinity and the announcement that she had found another man. This conduct commencing on a Friday evening and ending on the following Wednesday evening created such a state of provocation that the defendant in a frenzied state of passion killed her.

■■ The defendant in his brief filed with this court argues that he should have been found guilty of murder or not guilty of murder by reason of insanity. Should we accept this statement of the defendant then we are compelled to quote from the case of *People v. Young*, 11 Ill.App.3d 609, 297 N.E.2d 298, wherein the court stated: "The defendant may not complain of a finding of guilty of manslaughter where the evidence shows that he could have been found guilty of murder."

The defendant further contends that error was committed by allowing the jury to consider and return a voluntary manslaughter conviction. In light of our holding that the defendant did commit the crime of voluntary manslaughter, we cannot agree with this contention. In addition we find that the defendant waived any claimed error as to a manslaughter verdict instruction by not objecting at the time of the conference on instructions and further by not assigning the giving of such an instruction as error in his post trial motion. See *People v. Minor*, 20 Ill.2d 496, 170 N.E.2d 555; *People v. Stevens*, 11 Ill.2d 21, 141 N.E.2d 33; *People v. Neukom*, 16 Ill.2d 340, 158 N.E.2d 53; *People v. Riggins*, 13 Ill.2d 134, 148 N.E.2d 450.

Lastly the defendant claims that the sentence imposed was excessive and disproportionate to the offense, considering the defendant's background, character, and the jury's recommendation for leniency. While this appeal was pending our legislature enacted the Unified Code of Corrections. The sentencing provisions of the new code have been held to be applicable to cases pending on appeal. *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269; *People v. Kovacovich*, 10 Ill.App.3d 797, 295 N.E.2d 33; *People v. Sanchez*, 11 Ill.App.3d 1079, 297 N.E.2d 230.

Under the Code, voluntary manslaughter has been classified as a class 2 felony and provides that the maximum term of imprisonment be twenty years and the minimum term of imprisonment be one year. The Code sets forth the following provision which is applicable to the instant case:

"1005—8—1(c)(3): for a class 2 felony the minimum term shall be 1 year unless the court, having regard to the nature and circumstances of the offense and the history and character of defendant, sets a higher minimum term, which shall not be greater than one-third of the maximum term set in that case by the

court; * * *." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)(3).)

■■ Following the three to one ratio of sentencing as required by the code we hereby modify the sentence imposed by the trial court so that defendant's term of imprisonment shall be not less than six years and eight months nor more than twenty years.

We do not agree with the defendant's contention that his minimum sentence should be reduced to one year. Considering the circumstances of the offense we find an athletic individual weighing in excess of two hundred pounds slaying his wife, who was a slight woman weighing less than one hundred pounds. It is difficult to conceive of a more brutal crime than that committed by the defendant. We are aware of the jury's recommendation of leniency and by reducing the defendant's sentence in accordance with the dictates of the sentencing provisions of the Unified Code of Corrections which we are compelled to follow we believe that he has been afforded that leniency.

For the reasons set forth the judgment of conviction and the sentence of the circuit court of Tazewell County as modified are affirmed.

Affirmed as modified.

STOUDER, P. J., and DIXON, J., concur.