THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VINCENTE ZAMORANO, Defendant-Appellant.

(No. 72-240; ▮▮▮▮▮▮)

Second District—January 28, 1974.

Van R. Richards, Jr., of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant, Vincente Zamarano, was found guilty of murder and not guilty of attempt murder by a jury and was sentenced to a term of 20-40 years in the penitentiary.

Defendant raises the following issues on appeal:

(1) Did the trial court err in denying defendant's motion for a new trial based upon statements which were made by the State's Attorney in his opening statement and closing argument and which were not borne out in the testimony at trial?

(2) Did the trial court err in denying defendant's motion to dismiss the entire jury panel based upon the alleged prejudicial voir dire examination conducted by the State's Attorney?

(3) Did the court err in denying defendant's motion for a new trial based upon allegedly prejudicial written material which was not introduced into evidence during the trial and which was discovered in the jury room immediately following the return of the jury's verdict and a completion of the jury deliberations?

On Friday, November 5, 1971, at about 11:00 o'clock P.M., the defendant shot Jose Garcia in the lobby of the Guadalupano Club in downtown Elgin. Garcia was a foreman at the defendant's place of business, the Woodruff and Edwards Foundry in Elgin. At trial, defendant's defense was based on the theory that the defendant blundered onto Garcia, not expecting to see him in the lobby of the Guadalupano Club, at about 11:00 o'clock P.M. and then shot him in self defense. In June of 1971, a friend of the defendant was shot and killed at the foundry; no arrest

was ever made. Defendant testified that Garcia had made threats against his life after the murder of his friend. The last threat came on the day of the shooting. Following the death of his friend the defendant commenced carrying a gun. Defendant also testified that he has seen Garcia carrying a gun on many occasions.

Defendant states that in both the opening statement and closing argument of the prosecution, the prosecution commented that the defendant had been to the Club earlier in the evening on the night in question. Defendant argues that the prosecution knew it could not introduce evidence to that effect, nor did the prosecution attempt to prove such comments beyond the questioning of the defendant on whether he had been to the Club earlier in the evening. Defendant contends that such conduct by the prosecution was an attempt to prejudice the jury against the defendant by improperly discrediting his theory of self defense.

After a careful examination of the record, we find, however, that the prosecution in its opening statement did not state that the defendant was at the Club earlier in the evening but merely commented that a witness who was about to testify had been there earlier. Additionally, the prosecution in its closing argument did not make the comment claimed by the defendant but only stated that the defendant knew where he could find Garcia. This latter comment was based on evidence introduced at trial to the effect that Garcia regularly worked at the Club on weekends, and that the defendant had been to the Club many times on weekends.

During voir dire the State questioned venireman H. Wesley Cox in the presence of the entire jury panel in the following manner:

"Q. The defendant, through his lawyer, for first time, after I talked to the first four jurors, for the first time here today indicates that self defense would be a defense, and * * *.

MR. RICHARDS: I object to that, your Honor. It has been filed with the court and absolutely is not true.

THE COURT: Objection sustained and strike the remark.

MR. RICHARDS: I would like to be heard on that objection, your Honor.

THE COURT: Go ahead. If you want to make a motion * * *.

MR. PUKLIN: I haven't finished the sentence. I think the rest of the sentence cures what he might say.

THE COURT: Couch another question.

MR. PUKLIN: Q. Self defense is the defense here. There will be a jury instruction on self defense. Will you make the Defendant prove self defense in the terms of the law that will be given you?

A. Yes, sir.

MR. RICHARDS: I object to that, your Honor. He is asking the Defendant to prove self defense.

MR. PUKLIN: In the terms of the law that will be given to you.

MR. RICHARDS: The Defendant doesn't have to prove anything."

The defendant contends that by eliciting from Cox the pledge that Cox would "make the defendant prove self defense in the terms of the law that will be given you", the prosecution misrepresented the law in regard to self-defense. Defendant argues that such misrepresentations, which amounted to shifting the burden of proof to the defendant, constituted irreparable prejudice to the defendant and required dismissal of the entire jury panel.

■■■ Immediately following the above colloquy, a conference was held out of the presence of the jury. Upon resumption of the proceedings, the State's Attorney stated to the prospective jurors, in discussing self-defense, that there was no burden on the defendant to prove anything. The State's Attorney further had stated to prospective jurors prior to the above, that the defendant did not have to prove his innocence and that the defendant had no duty to prove anything. Similar statements of like effect were made by defense counsel in his voir dire examination of the prospective jurors. Finally, the State's Attorney in his closing argument again stated that the burden was on the State to prove the murder was committed by the defendant and that it was not a case of self-defense. It is also to be noted, that the jury were instructed properly by the court on the issue of self-defense. Looking at the record as a whole we do not find that the defendant was in fact prejudiced by the erroneous statement to the excused prospective juror, subsequently corrected many times in the voir dire examination and in the trial. The defendant also contends that the prosecution's inaccurate remarks about when the defendant had raised the self-defense issue, prejudiced the jury. In the above statement the State's Attorney alleged that the defense of self-defense was raised for the first time at the time of trial. This was incorrect and defendant contends that this, too, influenced the jury. Objection was made and the State's Attorney did not finish his question. He explained out of the presence of the jury that he was, in fact, referring to the issue of self-defense mentioned by the defense in their examination of prospective jurors and that he could not comment on this until the defense made it an issue in the trial. The trial court sustained the defense objection to these remarks. Accordingly, we are convinced that the jury panel was not prejudiced by the prosecution's remarks. Again, the trial court did not abuse its discretion in denying defendant's motion.

*People v. Weinstein* (1966), 35 Ill.2d 467, 220 N.E.2d 432, cited by

defendant is not applicable. In *Weinstein* the court reversed a murder conviction where the prosecution made repeated assertions in its closing argument that the defendant had the burden of introducing evidence to create a reasonable doubt of her guilt. The court found that because these statements were repeated, they sufficiently confused the jury. The error was not corrected by the court's giving of the correct instruction concerning the burden of proof. In the instant case the prosecution made just one statement which only tended to suggest that the defense had the burden of proof on the single issue of self-defense.

The jury in the case before us was sequestered from the time of its selection until the rendering of its verdict. Immediately following the jury's deliberations, a February, 1972, issue of Kiplinger's *Changing Times* magazine was found in the jury room by defendant's attorney and interpreter. The magazine contained an article entitled "Shouldn't we compensate the victims of crime?" The article concerns a factual account of a national governmental plan for the monetary compensation of victims of crimes. The article, however, begins in the following manner:

> "It could happen to anyone. You're late getting to your bus stop and, at a deserted corner, a man swiftly approaches. At first you take him for a panhandler, until you see the naked malice in his eyes. Before you can defend yourself or even cry out for help, he overpowers you. You feel a pain in the small of your back and, as you fall to your knees, a hand gropes for your wallet or purse.
>
> Such an encounter could mean a long hospital stay, a lifetime impairment—even death. The tragedy is doubly painful for the person whose losses and costs are not adequately covered by insurance or other benefits. Ironically, the assailant, even when caught and convicted, sometimes appears to be receiving more consideration for his basic needs than the innocent victim."

The defendant moved for a new trial based on the discovery of this article, but his motion was denied.

Contending the article appealed to the jury's sympathy for the deceased family, defendant argues that the article was sufficiently prejudicial as to require the trial court to grant him a new trial. We must disagree. The magazine article did not deal with defendant's particular crime, the trial, the victim, or the victim's family. The probability of prejudice, therefore, is not clearly evident. The defendant did not request the court to question the jury about the article. As a result, the overt actual effect the article had on the jury's deliberations is unknown and speculative.

■■ The granting of a new trial in this case is within the sound discretion of the trial court whose discretion should be based on the answers

of the jury to the court's interrogation, the nature of the alleged prejudicial material, and all the facts and circumstances found in the record. (*People v. Cox* (1966), 74 Ill.App.2d 342, 220 N.E.2d 7.) Although there was no inquiry made of the jury, the article's overall general treatment of its subject matter without one reference to the instant case convinces us that the trial court properly exercised its discretion in denying defendant's motion for a new trial. *Cf. People v. Martin* (1965), 62 Ill.App.2d 203, 210 N.E.2d 798, *Aff'd*, 35 Ill.2d 289, 220 N.E.2d 170.

For the foregoing reasons defendant's conviction is affirmed.

Affirmed.

SEIDENFELD and T. MORAN, JJ., concur.