THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH J. HARTNESS, Defendant-Appellant.

Third District   No. 75-251

Opinion filed January 7, 1977.

Robert Agostinelli and Verlin Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Fred R. Odendahl, State's Attorney, of Monmouth (James E. Hinterlong and Linda M. Vodar, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Kenneth J. Hartness appeals from a conviction of the crime of burglary, following a jury trial, and from a consequent sentence of 4 to 12 years in the penitentiary.

From the record it appears that on or about June 24, 1974, Jerry Knowles, his wife, daughter and a son, resided in a house located on Highway 34, 6 miles west of Galesburg, Illinois. The house in which the Knowles lived was owned by Mr. and Mrs. Graham. On July 24, 1974, Knowles, his wife and daughter, left their home for a short vacation. The

Knowles' son, Kenneth Knowles, did not accompany the family on the vacation but stayed with his grandmother in Galesburg. Before Jerry Knowles and his wife and daughter had left the house, the family locked all the doors. The front windows of the house were left open one-half inch but were covered by screens which were in good condition.

On July 25, 1974, Mrs. Graham was painting at the Knowles residence from 9 a.m. until about 12:50 p.m. She returned to the house at about 2:30 p.m. on that day, and upon her return noticed that the screen from one of the front windows was down and that the front window was completely closed. She then talked to Kenneth Knowles and Anita Wade, a relative of the Knowles. When Kenneth Knowles arrived at the house, he noticed that the screen from one of the front windows was laying in the bushes near the window and discovered that the back door of the house was unlocked. The son, Kenneth, did not notice if anything was missing from the house at the time. He notified the sheriff of Warren County of the situation at the house, however.

Paul Rude, a State patrol officer, stopped for lunch at a truck stop near Galesburg at 1:05 p.m. on July 25, 1974. Defendant Hartness was seated in the truck stop when Officer Rude arrived and was still at the truck stop when the officer left at 1:24 p.m. In the officer's opinion, defendant Hartness was drunk while at the truck stop. This truck stop was located 5 miles from the Knowles house. Officer Rude saw defendant Hartness at 3:18 p.m. on the same day. At that time, he took defendant Hartness into custody for causes not related to the instant case. Officer Rude then delivered defendant to the custody of Deputy Sheriff Hart in Warren County. Deputy Sheriff Hart returned to Warren County with defendant at about 4 p.m. on July 25, 1974. Defendant was then "booked" and searched. The search produced an engraved watch, $7.63 in change and in excess of $220 in currency from the possession of defendant. Defendant still appeared to be drunk at the time of the search. After defendant had been booked, Warren County Sheriff Watkins had received a report concerning a possible burglary at the Knowles home. Sheriff Watkins then went to the Knowles residence, but no one was home.

The Knowles family returned to the home on July 26, 1974. At that time, Jerry Knowles discovered that an engraved watch and some change was missing from the house. On July 26, 1974, Sheriff Watkins toured the Knowles home also. Mr. Knowles identified the watch taken from the possession of the defendant Hartness as a watch missing from the Knowles home. The watch was engraved on the back with the following legend: "J. W. Knowles. In appreciation of 15 years of loyalty and work well done. Gale Products. 1970."

Defendant was subsequently charged with burglary and aggravated battery. Prior to the trial, the trial court granted defendant's motion to

sever these two causes as unrelated. The Warren County public defender was appointed to represent defendant Hartness on September 9, 1974. Following a preliminary hearing on September 25, 1974, on September 30, 1974, defendant presented two motions to the court. The first of such motions requested that the court order a psychiatric examination of defendant, which was allowed by an order signed October 1, 1974. The defendant's second motion asked for a substitution of judges. On October 10, 1974, the chief judge of the circuit assigned Judge Kloster to hear this cause, and on October 17, 1974, Judge Klukos signed the order for substitution of judges as requested by defendant.

An indictment was returned by the grand jury on October 7, 1974, which charged defendant with burglary. A hearing was scheduled for October 15 but defendant was absent from court on that date, since he was undergoing the requested psychiatric examination. On November 12, 1974, defendant's attorney acknowledged receipt of the psychiatric report, and defendant thereafter entered a plea of not guilty to the charge of burglary.

On December 17, 1974, defendant filed a motion for discharge, alleging that he had been incarcerated since his arrest on July 25, 1974, and that he had not been brought to trial within 120 days of that date. On December 19, 1974, the court denied defendant's motion for discharge. The trial court found that defendant's motion for substitution of judges "caused delay, however slight." The trial court's order noted: "The Court cannot from the record find an actual delay, but basing its decision upon the fact that the motion for substitution of judges in and of itself caused a delay, however slight, that would toll the original four-month period and cause the State to commence anew from the date of the filing of the motion."

At the inception of the trial on December 23, 1974, the trial court admonished all jurors that they were not to discuss the case with anyone and that they were to decide the case only on the evidence presented in court and that they were not to listen to any reports on radio or television involving the case. The court was then adjourned until January 2, 1975.

Before the actual trial commenced, defendant moved to exclude all witnesses from the courtroom. The State's Attorney, in speaking to the motion, advised the court that the prosecutor wanted the sheriff to remain present, and that the sheriff would be a witness. The defense counsel asked that the sheriff be also excluded since he would be testifying, and that would be prejudicial to the defendant. The trial court then determined that he would permit the sheriff to remain in the courtroom to aid the State's Attorney, but would exclude all other witnesses. As a result, all witnesses were excluded with the exception of the Warren County sheriff. He was later called as a witness by both the State and the defense. Sheriff Watkins was the only witness called by the defense.

While Sheriff Watkins was testifying as a State's witness, he spoke of speaking to Lillian Derry, sister of defendant, on July 25, 1974, concerning "several investigations going on at that time." The sheriff questioned Miss Derry concerning the time of defendant's visit to Miss Derry on July 25, 1976, but asked her nothing else at that time "in regard to this case." On cross-examination, the sheriff was asked whether he was present when defendant was searched. Sheriff Watkins responded that he was present when the defendant "was searched pertaining to another case." On redirect examination, the sheriff was asked whether anything else he had said at the preliminary hearing was different from what he told the jury at the trial. The sheriff responded, "Not pertaining to this case."

The jury was excused for the day without additional admonition and the following morning defendant moved for a mistrial based on prejudicial publicity. The Monmouth Review Atlas, published as an evening paper on January 2, 1975, carried an article concerning the trial. The article named the jurors, the attorneys, and the judge. The testimony given at the trial was outlined in the article. The article noted the aggravated battery charge pending against defendant and described the facts surrounding defendant's arrest. The article further noted that defendant had a prior criminal record, was on parole at the time of his arrest, and had been in a mental hospital. The trial court denied the motion for mistrial and ruled that the jury had been admonished to ignore outside publicity and that the admonition was "the thing we will just have to stand on here" even though it had been made at the beginning of the trial and not later.

The trial then continued with testimony from Sheriff Watkins as a witness for the defense. The sheriff testified that no comparisons were made between defendant's fingerprints and fingerprints found at the Knowles' home. Sheriff Watkins testified that no one saw defendant at the Knowles' home but volunteered that he had spoken to people who saw defendant in the area. On cross-examination, the sheriff explained that two people saw defendant and four or five people saw defendant's car. On redirect examination the defense elicited that "in connection with this investigation" no one had described a 1964 Rambler (the type of automobile owned by defendant) as being in the area of the Knowles' home and no one had identified defendant. The State, on recross, asked whether anyone had "identified" defendant's vehicle. Sheriff Watkins replied affirmatively. At this time defense counsel wished to pursue the sheriff's use of the word "identify." The trial judge noted the scope of the examination which had preceded and indicated he had a general rule to limit questioning beyond recross-examination. The trial court then stated:

"Gentlemen, you know the rules of the Court as to examination of witnesses. Each of you have an opportunity for cross examination and recross examination and direct examination and redirect

examination. This Court is going to adhere to the rules because I think the purpose for that rule is to facilitate this trial, and any other trial, because without that rule you could go on indefinitely. For that reason I am going to deny the request * * *."

Thereafter, during closing arguments, the State's Attorney described the idea of a defendant's presumption of innocence being overcome by proof beyond a reasonable doubt. He compared the trial process to a set of scales and the prosecutor said: "When the testimony gets so heavy on one side it causes it to go down, that presumption of innocence is no longer with the defendant." He also addressed the concept that, if there were no reasonable explanation of defendant's possession of recently stolen property, then the jury could presume defendant guilty of burglary or theft. The State's Attorney said on this subject: "There is no reasonable explanation as to how that watch got out of the house. We know where it was when Mr. Hartness was arrested. There is no explanation, reasonable explanation, of how he got it. 'I bought it from somebody.' 'I found it lying in the street.' 'I found it here.' 'I found it there.' There is no explanation for that in this case."

On appeal in this court, defendant raises a number of issues which we will discuss in relation to the record in this court. The first issue raised by defendant is the assertion that the trial court erred in refusing to grant defendant's motion for discharge. Under section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a)), it is provided:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant * * *."

■■ A defendant waives his right to be tried within the statutory period by occasioning a delay in the trial process, and such delay starts the statutory period running anew. (*People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595; *People v. Spicuzza* (1974), 57 Ill. 2d 152, 311 N.E.2d 112.) A motion for substitution of judges can constitute a delay occasioned by the accused which will interrupt the running of the statutory period, as noted in those cases.

In the *Zuniga* case, the original judge had continued defendant's cases until November 28. Defendant moved to have his case advanced to November 7 at which time he presented a petition for the substitution of judges. The appellate court found that such circumstances did not constitute a delay occasioned by the defendant. The Illinois Supreme Court, however, agreed with the trial court and reversed the decision of the appellate court. Speaking of the effects of the defendant's motion for substitution of judges, the supreme court said (at 554):

"In any event, the [defendant's] cases lost whatever seniority status they had acquired on this [the original] judge's calendar and had to be returned to the presiding judge for reassignment to another trial judge. The defendant's cases then assumed their position on that judge's calendar, presumably at the bottom of the list of pending cases. Without knowing the exact condition of each judge's calendar and length of time required to dispose of each case thereon it is impossible to state whether the motion for a substitution of judges actually delayed bringing the defendant's cases to trial or advanced them as the appellate court found. We do know that the motion and reassignment started anew the administrative procedure of bringing the defendant's cases to trial."

The supreme court then reinstated the trial court's holding that the motion for substitution of judges constituted a delay occasioned by defendant.

In the *Spicuzza* case the supreme court continued to take the same view of what constitutes a delay occasioned by a defendant. In the *Spicuzza* case, the defendant's cases were set for trial on October 4. On that date, the defendant moved for substitution of judges, and the motion was allowed the same day. Further, on October 6, the defendant filed a discovery motion. On October 12, the defendant sought and was granted discharge on the ground that he had not been brought to trial within the prescribed 120-day period. The appellate court affirmed that determination, but the supreme court reversed the decision and based its decision in part on the defendant's motion for substitution of judges. The supreme court stated (at 155):

"This court has repeatedly held, most recently in *People v. Zuniga*, 53 Ill. 2d 550, that a motion for a change of judges constitutes delay occasioned by the defendant which will toll the 120-day period, and we see no reason to depart from that principle here. We recognize docket conditions in St. Clair County are not the same as in Cook County, but such a motion undeniably starts anew the administrative procedure of bringing defendant to trial."

Defendant here contends that his case is factually distinguishable from *Zuniga* and *Spicuzza*. Defendant stresses that his motion for substitution of judges was made before any assignment of judges was made for trial of his case. Defendant argues that the judge hearing motions on defendant's case was not, under administrative rules of the court, normally to be hearing such motions and that his motion for substitution of judges was designed merely to make the proceedings formally proper. The trial court, however, found that defendant's motion did cause a delay, however slight, even though an actual delay may not have been apparent

in the record. At least the defendant's motion, which may not have caused any great delay in terms of reassignment, did invoke administrative actions which acted to confuse and delay the trial of defendant's case and came within the precedents announced by the supreme court in the *Zuniga* and *Spicuzza* cases. We, therefore, conclude that the trial court did not commit reversible error in refusing to grant defendant's motion for discharge.

■■ Another basic contention is made on appeal that the evidence at the trial was insufficient to sustain a conviction for burglary. Defendant, in pursuing this issue, cites cases from other jurisdictions and seeks to argue that the evidence is not sufficient to sustain a conviction even though the Illinois courts may have held to the contrary. We feel, however, that the precedent set by the Illinois Supreme Court is binding on this court. We have noted the case of *People v. Franceschini* (1960), 20 Ill.2d 126, 169 N.E.2d 244, in which the Illinois Supreme Court said (at 130):

"The rule is well settled that the recent, exclusive and unexplained possession of the proceeds of the burglary in itself gives rise to an inference of guilt which may be sufficient to sustain a conviction unless there are other facts and circumstances which leave in the mind of the jury, or the trial court if a jury is waived, a reasonable doubt of guilt."

On the basis of such precedent we conclude that the evidence presented by the State was sufficient to establish guilt beyond a reasonable doubt. See also *People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551.

■■ Another issue raised is the assertion that the trial court abused its discretion in excepting Sheriff Watkins from the ruling in response to defendant's motion to exclude witnesses. Normally the exclusion of witnesses lies within the sound discretion of the trial court. Although it may be proper in a particular case to permit one or two witnesses to remain in the courtroom, a motion to exclude witnesses should normally be allowed. (*People v. Dixon* (1961), 23 Ill. 2d 136, 177 N.E.2d 206.) An objection was made to the ruling at the trial but the alleged error was not included in defendant's post-trial motion which was filed January 30, 1975. Normally, all issues which are not preserved in defendant's post-trial motion are waived for purposes of appeal. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 890; *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.) The trial court did not indicate that it lacked authority to make a ruling excluding all witnesses but simply permitted the sheriff to remain. This practice of permitting a State witness, usually an arresting officer, to stay in the courtroom, is part of the court's discretionary authority. (See *People v. Mack* (1962), 25 Ill. 2d 416, 185 N.E.2d 154; *People v. Townsend* (1957), 11 Ill. 2d 30, 141 N.E.2d 729.) We, therefore,

find no reversible error in the ruling of the trial court with respect to permitting Sheriff Watkins to remain in the courtroom while other witnesses were excluded.

Defendant further contends that his right to a fair trial was plainly and irreparably compromised by repeated references, at the trial, to another "investigation" or "case" in which defendant was involved, and by the prosecutor's comments, in closing argument, that defendant was "under arrest for another matter." A related contention is also made that the prosecutor's remarks during closing argument constituted reversible error either as a comment on defendant's failure to testify or as a misstatement of the rules relating to burden of proof in criminal cases. From the standpoint of procedure, defendant appears to have waived these errors for the purpose of this appeal. Defense counsel did not object at the trial to any of these references and the alleged errors were not included in defendant's post-trial motion. As we have noted, under such circumstances, defendant can be deemed to have waived the alleged errors for purposes of appeal. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387; *People v. Ahlberg* (3d Dist. 1973), 13 Ill. App. 3d 1038, 301 N.E.2d 608.) From a substantive standpoint, it is clear that defendant is entitled, under considerations of fairness and impartiality, to have his guilt or innocence determined solely with reference to the crime with which he is charged. (*People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120.) The evidence of commission of other crimes by a defendant is admissible in a criminal trial, however, if that evidence is relevant for a purpose other than to show the defendant's propensity to commit crime. *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

■■ It was clear that much of the evidence against defendant in this case was developed as a result of his being taken into custody in another matter. Investigation of this case apparently paralleled the investigation of another case against defendant. Such circumstances prompted witnesses to indirectly qualify their responses, at times, with phrases such as "in connection with this investigation." That qualification was necessary, primarily, so that the responses would be entirely truthful and, secondly, to insure that the testimony given at the trial with reference only to the investigation of the instant case could not later be used as an impeachment device at another trial when testimony might be given by the same witnesses about a parallel investigation involving defendant. References to defendant being in custody in connection with another matter were, therefore, necessary for the purpose of explaining the discovery by the police of the engraved watch in the possession of defendant.

■■ The references to "another investigation" were thus relevant for purposes other than showing defendant's propensity to commit crime. To

the extent that the references were objectionable, defendant was entitled, upon making objection in the trial court, to an instruction limiting the use of such evidence. Defendant, however, failed to object at the trial and, therefore, waived even the protection of a limiting instruction.

As respects to the prosecutor's comments, it is clear that the prosecutor is prohibited from referring to or commenting on the failure of defendant to testify in his own behalf. (Ill. Rev. Stat. 1973, ch. 38, par. 155—1.) The prosecutor's comments here stress the lack of reasonable explanation for defendant's possession of recently stolen property and did include references to an explanation such as "I bought it from somebody." When a defendant does not testify at trial, any comment upon the lack of reasonable explanation for possession of recently stolen property reflects, indirectly, upon the defendant's failure to testify. The prosecutor's comment here, since it was phrased in the first person singular, did call more attention to the defendant's failure to testify than a general reference to lack of reasonable explanation.

■■ Similarly, the prosecutor's comments concerning the presumption of innocence and burden of proof might have been misleading to the jury. The prosecutor outlined the presumption of innocence, compared the trial process to a set of scales, and said: "When the testimony gets so heavy on one side it causes it to go down, that presumption of innocence is no longer with the defendant." The fact that there were clear explanations of the burden of proof by the trial court in the instructions may have tended to offset any misunderstanding as to this issue. We certainly feel that such presentation should be avoided since the prosecutor is well advised that the State must prove the defendant guilty beyond all reasonable doubt and the illustration sought by the prosecutor is hardly indicative of the nature of such burden. We are not reversing, however, on this issue since defendant apparently made no objection to the statement and no reference was made to the statement in defendant's post-trial motion.

■■ Defendant also contends that the trial court abused its discretion in denying defendant's motion for mistrial because of the alleged prejudicial publicity in the local newspaper. The courts of this State have frequently stated, as we did in *People v. Henderson* (3d Dist. 1976), 39 Ill. App. 3d 502, 348 N.E.2d 854, that the granting of a mistrial due to prejudicial publicity is a matter within the sound discretion of the trial court and an abuse of that discretion will result in a reversal. We indicated that a mistrial was not warranted in every situation in which a jury is exposed to potentially prejudicial news coverage. In the instant case, the jury, when impanelled, were instructed to decide the case only on the evidence presented in court and to ignore radio and television reports about the case. Approximately 10 days later, a newspaper article concerning the trial was published. The trial court, relying on prior

admonition to the jury to ignore outside publicity, denied defendant's motion for mistrial. The defendant did not request that the jury be polled about whether or not the article had been read or if they knew anything about the article. The effect of the article upon the jury is unknown and speculative. Under such circumstances, it might not be consistent for this court to make a finding that the trial court abused its discretion. See *People v. Zamorano* (2d Dist. 1974), 16 Ill. App. 2d 807, 306 N.E.2d 902.

■■ ■ A final contention is made by defendant that the trial court abused its discretion in refusing to permit examination beyond recross-examination of a defense witness, Sheriff Watkins. As we had noted in the statement of facts, Sheriff Watkins had been called as a witness for the defense. He conceded that no fingerprints were taken to connect defendant with the offense and also repeated that no one saw defendant at the Knowles' home, even though he had volunteered that he had spoken to people who saw Hartness in the area. That comment was later explored on cross-examination and he testified that two people saw Hartness "in the area" and four or five people saw his vehicle "in the area." Defense counsel pursued the subject on redirect examination at which time the sheriff stated that defendant was not exhibited to anyone or identified by anyone as being someone they saw in the vicinity on the date in question in connection with the investigation of the instant case. The prosecutor then asked one question on recross-examination in which the sheriff was asked "in regard to this investigation or any other investigation did anyone identify the vehicle? I ask you to answer that yes or no." The sheriff's answer was "yes." Defense counsel sought to further examine the sheriff concerning his use of the word "identify" inasmuch as it was a new term and inasmuch as the prosecutor's question had specified no particular place or area. The trial court then referred to what it described as "rules of the court" and noted that the parties had the opportunity for direct and redirect and for cross and recross, and the court then said:

> "This court is going to adhere to the rule because I think the purpose for that rule is to facilitate this trial, and any other trial, because without that rule you would go on indefinitely. For that reason, I am going to deny the request. * * *"

The trial court did not argue that the trial court could not, in the exercise of its sound discretion, consider the nature of the proposed further examination and then refuse to permit it. The trial court instead did not address the nature of the examination but, rather arbitrarily, focused on what is described as a "rule of court" which did not permit examination beyond recross in any trial. We do not believe that such refusal of the court to consider the facts and circumstances in this case was proper. In *Grundy County National Bank v. Myre* (3d Dist. 1975), 34 Ill. App. 3d 287, 339 N.E.2d 348, where the trial court had responded to a request for

recross-examination by declaring "there is no recross," we reversed and held that the trial court had refused to exercise the discretion which it had in the matter. In that case we emphasized that the defendant then was refused the opportunity to counter what might have been misleading testimony elicited on redirect examination. In the instant case the trial court referred to a "rule of court" in its decision not to allow examination beyond recross. There is no rule with which we are familiar or no law in this State which forbids examination beyond recross, if pertinent and significant from the standpoint of the parties making such further examination. (See also *People v. Scott* (1st Dist. 1968), 100 Ill. App. 2d 473, 241 N.E.2d 579.) While the sheriff in the instant case had earlier used the term "identified" to mean no more than the person had seen a car similar in color to the car driven by the defendant, he may or may not have been referring to the term in the same sense when he responded to the question by the prosecutor in this case. This was not made clear to the jury since the court prohibited further examination and the jury was left free to infer that a very detailed model for model examination established a similarity. The refusal to permit the defendant to further examine Sheriff Watkins concerning his assertion that defendant's car had been identified on the basis of the so-called "rule of court" was clearly prejudicial error, since it allowed testimony to go unexplained when the testimony could be susceptible to misconstruction.

For the reason stated, therefore, we believe that the conviction of defendant should be reversed and the cause should be remanded. This cause is accordingly reversed and remanded to the Circuit Court of Warren County for a new trial.

Reversed and remanded.

Mr. JUSTICE BARRY, specially concurring.

Although I concur in the result reached in Justice Alloy's opinion, there are several errors of the trial court, rather than only one, which require reversal of the cause and remandment to the Circuit Court of Warren County. These additional errors, the raising of which Justice Alloy finds the defendant waived, by my view irreparably compromised a fair trial.

First, the prosecutor's comments during closing argument concerning the burden of proof and the presumption of innocence, as well as the comments alluding to the defendant's failure to testify, are so prejudicial that, in the interest of justice, a trial court should have granted a mistrial, even without an objection from the defendant's counsel. Secondly, considering the lapse of time between the commencement of the trial and admonition of the jury, and the local news story, once the possibly prejudicial publicity in the only daily paper in the jury's community was

brought to the trial judge's attention by the defendant, the trial judge not only should have renewed his admonition to the jury to disregard such publicity, but should have polled the jury to determine the prejudicial effect of the newspaper article. Since the trial judge presides over the proceeding to ensure the defendant a fair and impartial trial, the failure of a defense counsel to request that the jury be polled under these circumstances cannot justify either the trial court's failure to poll the jury or our failure to signify the trial court's action as contributing to plain error.

Lastly, while admitting that the case law in Illinois clearly supports Justice Alloy's position concerning the trial court allowing the sheriff to remain in the courtroom as an exception to the order excluding witnesses, I believe it is time to re-examine the rationale underlying this part of Illinois law. In highly populated areas of this State, the case load of the state's attorney is such that the presence of a law enforcement official is necessary to assist the state's attorney in prosecuting cases. On the other hand, in the downstate, rural areas, the caseload is much lighter and the state's attorney can more easily familiarize himself with each case. Under the latter circumstances the usual excepting a law enforcement official from the order excluding witnesses is unnecessary. Allowing such a law enforcement official to sit with the prosecutor, while wearing his uniform and all badges of authority, could easily result in prejudicing the jury because of the high regard with which law enforcement officials are regarded by the average citizen. Furthermore, this adds to his believability as a witness. The better rule would be that the state's attorney has the burden of proving the need to have a law enforcement official present in the courtroom as opposed to enabling the law enforcement official who is a material witness to bolster his testimony by hearing all the other testimony given during the trial. No party should have an automatic exception to the order excluding witnesses and the attendant advantages.

Accordingly, I would have reversed for all these reasons as well as the failure of the trial court to allow redirect examination.

Mr. JUSTICE STOUDER, concurring in part and dissenting in part.

I believe the defendant was entitled to discharge because of the failure of the People to bring the defendant to trial within the 120-day period required by section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(a)). Consequently, I believe the trial court erred in denying the defendant's petition for discharge. I respectfully disagree with the contrary holding of the majority of the court, but I concur in the further result reached by the majority remanding this case for a new trial because of trial errors.

It is undisputed the defendant was not brought to trial within the 120 days required by statute and the only issue with respect to this aspect of the case is whether the delay was occasioned by the conduct of the defendant. As suggested by the majority of the court, whether any delay occurred depends on what effect is given to the motion which in form requested the substitution of judge.

I believe there was no delay attributable to the conduct of the defendant for two general reasons. First, the motion in question was not a motion for the substitution of a judge and second, whatever the motion did seek did not delay the trial.

The chronology of events specifically found by the trial court in its written order denying the discharge petition is of particular significance. Defendant was arrested on July 25, 1974. He filed the questioned motion on September 30, 1974, prior to his preliminary hearing. The preliminary hearing was commenced on September 30, 1974, and concluded on October 4, 1974. On October 7, 1974, the defendant was indicted by the grand jury and on November 12, 1974, he was arraigned. The relief requested in the substitution motion was apparently formalized by an order on October 17, 1974. Although not mentioned in the order denying discharge, it appears the case was assigned by Judge Roberts for trial on October 25, 1974.

From the foregoing chronology, as well as from the briefs of the parties, it is undisputed that the motion in question was filed prior to preliminary hearing, prior to indictment, prior to arraignment and prior to assignment for trial.

The chronology of events also brings into focus the nature of the motion itself. The motion, in form, sought the substitution of a judge, but the substance of the motion was a request or a reminder that in accordance with local circuit court rules, the case should be assigned for trial to a judge other than the one who would have had customarily heard the case on its merits. According to local circuit court rules, a case should not be heard on its merits by a judge who participated in any of the preliminary proceedings. According to the motion, for some reason or other, the judge who would have ordinarily heard the case on its merits conducted the hearing at which defendant's bond was set and according to the circuit court rules, this judge should not then have heard the case on its merits. The existence of the circuit court rule and the underlying facts which form the basis of the motion are not disputed by the People on this appeal. Nevertheless, the People argue that so long as the defendant requested the substitution of a judge, delay occurred as a matter of law attributable to the conduct of the defendant. It seems to me that it is the substance of the motion and not its form which determines its effect and legal significance. If from the substance of the motion it appears that no

substitution of judges was requested, then such substance should be given effect. That this was the substance of the motion is clear both from the undisputed facts, and the nature and chronology of events. At least in the usual sense of legal proceedings, I am unable to understand how there can be a substitution of judges for trial prior to preliminary hearing, indictment or arraignment. Likewise, I fail to see how there can be a substitution of judges until there has been an initial or original assignment of a judge for whom substitution is sought.

Even if the motion is regarded as seeking some affirmative action, again the chronology of events demonstrates that defendant's conduct did not cause any delay. It did not cause any interference with the administrative process of assigning the case for trial and neither the trial court nor the majority of this court point to any evidence to the contrary.

The trial court specifically found that no actual delay was caused by the defendant's motion, but on the authority of *People v. Zuniga*, 53 Ill. 2d 550, 293 N.E.2d 595, and *People v. Spicuzza*, 57 Ill. 2d 152, 311 N.E.2d 112, it felt obliged to hold that the motion per se caused delay. The majority of the court likewise rely on the two foregoing cases. However, as I have indicated earlier, the motion in this case was not an intrusion into or an interference with the administrative procedure of assigning cases to judges for trial and hence the rules announced in those cases are not controlling on the result reached in this case. On the contrary, the motion is more analogous to a discovery motion or a motion to set or reduce bail. However, of crucial significance is the fact that this motion was filed and heard before defendant was indicted or arraigned, both of such steps being conditions precedent to the commencement of any administrative procedure setting the case for trial. Under these circumstances I believe the defendant's trial commenced too late to avoid the consequences of the statute.

As indicated in the initial paragraph of this opinion, I do agree with the majority's holding that a new trial is required on account of trial errors. In addition to my concurrence with the reasons for this result, namely those related to the limitation of further examination of the witnesses, I also believe that the improper remarks of counsel during final arguments likewise support this result and I believe that either the objections to these remarks were properly preserved or the errors should be regarded as plain errors.