NOTICE

Decision filed 11/19/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 150236

NO. 5-15-0236

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 14-CF-406 |
| | ) | |
| DANNY S. GARNER, | ) | Honorable |
| | ) | William G. Schwartz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Barberis and Justice Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1     After a jury trial in the circuit court of Jackson County, defendant, Danny S. Garner, was found guilty of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)) and sentenced to four years in the Department of Corrections to be followed by one year of mandatory supervised release. The issues raised by defendant in this direct appeal are: (1) whether the trial court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) during questioning of the venire, (2) whether the trial court committed reversible error in refusing to permit recross-examination as a blanket policy, and (3) whether the trial court erred by *sua sponte* giving the jury a "deadlock" instruction. We reverse and remand for a new trial.

1

¶ 2                                    I. BACKGROUND

¶ 3    The State charged defendant by information with unlawful possession of a weapon by a felon. A jury decided the case. During *voir dire*, the trial court asked prospective jurors whether they understood the following four principles set forth in Rule 431(b): (1) that defendant is presumed innocent of the charges, (2) that before defendant can be convicted, the State must prove defendant guilty beyond a reasonable doubt, (3) that defendant is not required to offer any evidence, and (4) that if defendant does not testify, it cannot be held against him or her. However, the trial court failed to ask the prospective jurors whether they accepted the four principles.

¶ 4    At trial, Detective Anthony Williams of the Carbondale Police Department testified he was on foot patrol on the "Strip" in Carbondale during the early morning hours of September 20, 2014. After the bars closed, the scene was loud and chaotic. He and other officers were assigned to crowd control. Williams approached a vehicle parked in a bank parking lot and told the occupants it was time to leave. Williams noticed that the front passenger door of the car was open. He saw defendant "squatt[ing] and reaching under the front passenger's seat." It appeared to Williams that defendant was trying to hide something.

¶ 5    When defendant stood up, Williams noticed a "small black gun" on the passenger floorboard. Williams tried to hold defendant, but defendant was able to get away from Williams, grab the gun, and run out of the bank parking lot. Williams chased defendant and radioed other officers that defendant was carrying a gun. At one point, defendant dropped the magazine from the gun, and Williams picked it up and put it in his pocket. The magazine contained five bullets. Several officers joined Williams in pursuit of defendant.

¶ 6    At one point, Williams saw defendant throw an object. Soon thereafter, defendant was apprehended by other officers. Williams then checked the area where defendant threw the object. Williams retrieved a .380-caliber Sig Sauer semiautomatic handgun approximately 10-20 yards from where defendant was apprehended.

¶ 7    On cross-examination, Williams testified that he submitted the gun, bullets, and magazine to the crime lab for fingerprint, DNA, and ballistic testing. Williams did not know whether the tests had been performed.

¶ 8    On redirect, the State asked Williams whether he regularly submits collected evidence to the crime lab for DNA testing, and Williams acknowledged that he does. Williams said that to his knowledge, the evidence in this case had not been DNA tested. According to Williams, the crime lab actually has "a policy that they will not test guns for DNA touch" because it is "very labor intensive." The State then introduced into evidence People's Exhibit 13, a policy statement from the Illinois State Police Division of Forensic Sciences, which includes language that specifically excludes DNA testing on felon in possession cases. Williams said he was aware of the policy excluding DNA testing on guns involved in felon in possession cases, but decided to submit the evidence to the crime lab anyway. Ultimately, Williams testified he was "certain" that the gun recovered, People's Exhibit 11, was the gun defendant threw.

¶ 9    After the State indicated it had no further questions for Detective Williams, the trial court asked Williams to step down and asked the State to call its next witness. The following colloquy between defense counsel, Mr. Ting, and the trial judge then ensued:

"Q. [Attorney for defendant] No opportunity to cross?

3

A. [The court] That's right. You had an opportunity to cross. You cross-examined him. Then it's redirect. That's the way it works, Mr. Ting. State gets last shot at a witness when they are their witness."

The State then called its next witness, Jeff Withrow, a Carbondale police officer.

¶ 10    Withrow was also on duty on the night in question and was one of the officers who pursued defendant after Officer Williams yelled, "He's got a gun." Withrow tackled defendant and took him into custody for possessing a weapon. On cross-examination, Withrow admitted that he initially thought that the magazine defendant dropped, People's Exhibit 10, was a gun. He did not realize it was a magazine until he slowed down his chase and got a closer look at it. When defendant threw the gun, he was not sure what defendant threw.

¶ 11    On redirect, Withrow said he later learned the object defendant threw right before he was captured was a gun. Another officer told him that the item recovered was a handgun. After the prosecutor said, "I have nothing further," the trial judge told the witness he could step down and asked the State to call its next witness. Defense counsel did not attempt to recross.

¶ 12    The State called four other police officers—Jeff Lustig, Brett Garden, Baltazar Roman, and Brandon Burris—who were also on foot patrol during the early morning hours in question to testify about the events leading up to defendant's arrest. Each officer was cross-examined, and the State followed up with redirect. Defense counsel did not attempt to recross any of these four officers.

¶ 13    After Officer Burris testified, the State said it had no further witnesses. The trial court then told the members of the jury that the parties stipulated that defendant was previously convicted of a violation of federal law equivalent to a felony and that they could consider the

4

prior conviction as a prior felony conviction during deliberations on the current charge of unlawful use of weapon by a felon. Defendant presented no evidence.

¶ 14     Approximately 1 hour and 20 minutes after the jury began deliberating, the jury sent out the following note: "Could you please give us the/a legal definition of reasonable doubt and how it pertains to our decision of guilty or not guilty. Thank you." The trial court said it was inclined to give the jury the *Prim* instruction, but was willing to listen to suggestions from either the State or the defense. The prosecutor and defense counsel both agreed with the trial court's decision to give the *Prim* instruction in response to the jury's note, and said instruction was given to the jury. Less than three hours after the jury began deliberating, it returned a verdict finding defendant guilty. Defendant now appeals.

¶ 15                                    II. ANALYSIS

¶ 16     Defendant raises three issues on appeal. We first address the issue of whether the trial court committed reversible error in refusing to permit recross-examination, as we find this issue dispositive. Defendant insists that the trial court's refusal to permit recross-examination as a blanket policy constitutes prejudicial error and denied him a fair trial. The State asserts that the issue was not properly preserved because defendant failed to make an offer of proof to identify what he lost because of the inability to recross and failed to raise the issue in his posttrial motion.

¶ 17     While the State is correct that defendant failed to complain of this error, we choose to address it under the plain error doctrine. Illinois Supreme Court Rule 615(a) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). In order to invoke the plain error doctrine, it must be plainly apparent that an error so prejudicial has occurred so that real justice has been denied or that the verdict of the jury may have resulted from the error. *People v.*

5

*Herron*, 215 Ill. 2d 167, 178 (2005). The error involved here affected the entire trial and undermines our sense of fairness of the proceeding.

¶ 18    A criminal defendant's right to confrontation under the sixth amendment includes the right to cross-examine witnesses against him. *People v. Kliner*, 185 Ill. 2d 81, 130 (1998) (citing *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). The scope and extent of cross-examination and recross-examination are within the discretion of the trial court. *People v. Kirchner*, 194 Ill. 2d 502, 536 (2000); *People v. Graves*, 2012 IL App (4th) 110536, ¶ 16. Such rulings will be disturbed only in cases where an abuse of discretion occurs, which results in manifest prejudice to defendant. *People v. Johnson*, 2013 IL App (1st) 111317, ¶ 37.

¶ 19    Defendant correctly characterizes the trial court's evidentiary ruling in issue as a blanket policy denying him the right to recross any witness. The record shows that the State called Detective Williams as its first witness. After the State indicated it had no further questions for Detective Williams, the trial court asked Williams to step down and asked the State to call its next witness. At that point, defense counsel interjected, "No opportunity to cross?" The trial court replied, "That's right. You had an opportunity to cross. You cross-examined him. Then it's redirect. That's the way it works ***. State gets last shot at a witness when they are their witness." We know of no such rule. In fact, there is no such rule.

¶ 20    The trial court made an arbitrary ruling that we cannot uphold as a matter of discretion because it allowed the State to present evidence on redirect that defendant was unable to confront. In support of our determination, we rely on *Grundy County National Bank v. Myre*, 34 Ill. App. 3d 287 (1975), and *People v. Hartness*, 45 Ill. App. 3d 129 (1977). In *Grundy*, the defense counsel asked the court to allow a " 'couple more on recross, if I may,' " to which the trial court responded, " 'There is no recross.' " *Grundy*, 34 Ill. App. 3d at 289. *Grundy* pointed

6

out that the "defendant was not given a chance to frame any questions on recross and was denied the right to cross-examine [the witness] about new matters brought out on redirect." *Id.* That court went on to find that the case before it "must be distinguished from those where the trial court is alleged to have acted in abuse of its discretion in limiting the scope of recross; here the court refused to exercise any discretion at all." *Id.* The case before us presents the exact same situation. In denying any recross, the trial court abused its discretion because it failed to exercise any discretion at all.

¶ 21    In *Hartness*, the defendant argued that the trial court abused its discretion in refusing to permit examination beyond recross-examination of a defense witness, Sheriff Watkins. *Hartness*, 45 Ill. App. 3d at 140. On recross, the prosecutor asked one question, " '[I]n regard to this investigation or any other investigation did anyone identify the vehicle?' " *Id.* The sheriff was instructed to reply only yes or no, and he responded "yes." *Id.* The trial court denied defense counsel's request to further examine the sheriff on the basis of "rules of the court" and pointed out that the parties had the opportunity to ask questions under direct and redirect and cross and recross. *Id.* The trial court specifically stated as follows:

> " 'This court is going to adhere to the rule because I think the purpose for that rule is to facilitate this trial, and any other trial, because without that rule you would go on indefinitely. For that reason, I am going to deny the request.' " *Id.*

The reviewing court found the trial court's ruling arbitrary.

¶ 22    The *Hartness* court specifically stated: "There is no rule with which we are familiar or no law in this State which forbids examination beyond recross, if pertinent and significant from the standpoint of the parties making such further examination." *Id.* at 141. The court went on to find the trial court's restriction of examination of the sheriff by the defense to be prejudicial because

7

"it allowed testimony to go unexplained when the testimony could be susceptible to misconstruction." *Id.* We agree with *Hartness* that this type of arbitrary, blanket policy of prohibiting further cross-examination of a witness constitutes prejudicial error.

¶ 23    Nevertheless, the State asserts that reversible error occurs only when defendant establishes he was prejudiced by the trial court's blanket prohibition of recross-examination. We point out that the record here shows that the State brought out new matters on redirect. During cross-examination, Officer Williams testified he submitted the gun, bullets, and magazine recovered from the scene to the crime lab for testing, but was not sure whether the crime lab conducted the tests. On redirect, the State asked Williams why the evidence was not tested. Williams went on to explain that the crime lab has a policy of not testing guns for DNA due to the labor intensity of such testing. The State then introduced People's Exhibit 13, an Illinois State Police policy statement, which includes language specifically excluding DNA testing for felon-in-possession cases. The trial court then denied defendant the opportunity to recross Officer Williams about the crime lab policy against testing guns.

¶ 24    By denying defendant the opportunity to examine Officer Williams about the crime lab policy against testing in possession cases, defendant was denied the opportunity to cross-examine Williams about a new matter brought out on redirect. " 'Where new evidence is opened up on redirect examination, the opposing party must be given the right of cross-examination on the new matter ***.' " *Grundy*, 34 Ill. App. 3d at 289 (quoting *United States v. Stoehr*, 196 F.2d 276, 280 (3d Cir. 1952)). Because the State brought out a new matter on redirect, refusal to permit recross prejudiced defendant.

¶ 25    Finally, we point out that the trial court was fairly forceful in refusing to allow defense counsel to recross Officer Williams. As might be expected in such a situation, defense counsel

did not attempt to recross any of the following five witnesses. Accordingly, the trial court's evidentiary ruling affected the entire proceeding and was clearly prejudicial to defendant's case. As such, it is plain error, and we agree with defendant that the case must be reversed and remanded for a new trial.

¶ 26                              III. CONCLUSION

¶ 27    Because of our determination on the issue of denial of the opportunity to recross, we need not address the other two issues raised by defendant because the other issues are not likely to reoccur on remand. For the reasons stated above, we reverse and remand for a new trial.

¶ 28    Reversed and remanded.

2018 IL App (5th) 150236

NO. 5-15-0236

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Jackson County. |
| v. | ) ) | No. 14-CF-406 |
| DANNY S. GARNER, | ) ) ) | Honorable William G. Schwartz, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed:**     November 19, 2018

---

**Justices:**     Honorable Richard P. Goldenhersh, J.

Honorable John B. Barberis, P.J., and
Honorable David K. Overstreet, J.,
Concur

---

**Attorneys for Appellant**     James E. Chadd, State Appellate Defender, Ellen J. Curry, Deputy Defender, Lawrence J. O'Neill, Assistant Appellate Defender, Office of the State Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt. Vernon, IL 62864

---

**Attorneys for Appellee**     Hon. Michael Carr, State's Attorney, Jackson County Courthouse, 1001 Walnut Street, Murphysboro, IL 62966; Patrick Delfino, Director, Patrick D. Daly, Deputy Director, Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864