**The People of the State of Illinois, Plaintiff-Appellee, v. Carl Ambrose McMurry, Defendant-Appellant.**

**Gen. No. 64–66.**

Second District.

November 5, 1965.

Rehearing denied December 8, 1965.

Robert P. O'Meara and Richard B. Kuseski, both of Waukegan (Richard B. Kuseski, of counsel), for appellant.

Bruno W. Stanczak, State's Attorney, of Waukegan (Jack Hoogasian, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the Court.

Defendant-Appellant was indicted on four counts of murder and one count of voluntary manslaughter. The jury returned a verdict finding him guilty on the manslaughter count, but returned no verdict on the murder counts.

Defendant's principal contention is that the evidence failed to sustain the charge of voluntary manslaughter. This count of the indictment alleged that the defendant:

> ". . . committed the offense of voluntary manslaughter, in that he, acting under a sudden and intense passion, resulting from serious provocation by Henry Louis Clauds, did stab and kill the said Henry Louis Clauds with a butcher knife . . . without lawful justification. . ."

The language of this count was substantially in the words of Ill Rev Stats ch 38, sec 9–2(a) (1), (1963).

We will examine the evidence in the case to see whether it sustains the charge of voluntary manslaughter. The defendant was employed at the Thorngate Country Club in Deerfield, Illinois, as a kitchen helper. He lived at the Club and shared a room with Henry Louis Clauds, the deceased, who was a dishwasher. In the early morning hours of August 19, 1963, the police received a call

249

to go to the club. When they arrived, they found Clauds' body in the kitchen. The defendant was in the lobby of the club. Defendant gave the police his version of the matter at that time, and later repeated essentially the same story to the State's Attorney on several occasions. He stated that he had gone out after work the previous evening and had returned to his room about one o'clock in the morning. When he entered the room, Clauds was in bed but still awake. The defendant asked Clauds to pay him the two dollars he owed the defendant, whereupon a brief argument ensued. According to the defendant, Clauds then jumped out of bed and ran at him with a knife. The defendant struck Clauds' arm, and the knife fell to the floor. They struggled for the knife, and the defendant stabbed Clauds. Clauds then ran from the room and went downstairs. The defendant followed him and remained until the police arrived.

One of the witnesses for the State was Abdul Dahleh, another employee at the club who occupied the room next to the one shared by defendant and Clauds. Dahleh testified that he was awakened the night of the occurrence by the sound of voices in the next room. He then heard the sound of footsteps leaving the room and walking down the hall. Five or six minutes later, he heard the sound of footsteps returning to the room. He heard voices again, whereupon he got out of bed and stepped into the hall. He saw Clauds emerge from the next room and run downstairs.

Another witness for the State was Eugene Garner, who occupied the same cell with the defendant at the Lake County jail while defendant was awaiting trial. Garner testified that the defendant had told him that he had gone downstairs to get the knife, that when he had returned to the room Clauds had called him a name, they argued, and defendant stabbed Clauds while fighting with him.

The defendant testified in his own defense and gave essentially the same version of the occurrence that he had given to the police and State's Attorney. The medical evidence showed that Clauds had been stabbed once, and that this wound had been fatal.

 The foregoing was all of the evidence concerning the facts of the killing. We must agree with the defendant that this evidence is insufficient to establish the crime of voluntary manslaughter. This crime is committed when the defendant kills without lawful justification while "acting under a sudden and intense passion resulting from serious provocation by the individual killed." Ill Rev Stats ch 38, sec 9–12(a)(1), (1963). There simply is no evidence in this record that the defendant was acting under an intense passion caused by the kind of provocation contemplated by the statute. This is true on either version of the facts. If the defendant's own account be credited, he was not reacting in anger but was attempting to defend himself. If the testimony of Abdul Dahleh, together with the testimony of Eugene Garner, could be regarded as sufficient to establish that defendant and Clauds had some words, whereupon defendant walked downstairs to the kitchen, procured a butcher knife, and then returned to the room five or six minutes later and stabbed Clauds during the course of a fight, these facts would establish a murder, not a manslaughter. The only evidence of "provocation" on this theory would be the "voices" overheard by Dahleh, and, of course, it is clear that mere words can never amount to the "provocation" necessary to reduce a killing from murder to manslaughter. People v. Marrow, 403 Ill 69, 75, 85 NE2d 34 (1949); People v. Russell, 322 Ill 295, 301, 153 NE 389 (1926). Moreover, the five or six minute interval between the "voices" and defendant's return to the room with the butcher knife would, in our view, be a period of sufficient length to negate the possibility

that the defendant was acting under a "sudden and intense passion" within the meaning of the statute.

██ On the evidence in this record, the defendant was either guilty of murder or he was not guilty of anything. The case is therefore controlled by such authorities as People v. Newman, 360 Ill 226, 231, 232, 195 NE 645 (1935), where the court stated:

> "This court has often announced the rule that where the evidence is such that it admits of but one of two conclusions, either that the defendant is guilty of murder or is innocent, the giving of an instruction and form of verdict on manslaughter is improper, and where given at the request of the People amounts to error requiring a reversal of the judgment if the accused be found guilty of the lesser crime."

See also People v. Smith, 404 Ill 350, 354, 355, 88 NE2d 834 (1949).

██ The defendant made timely objection to the instruction given the jury on manslaughter, and also to the verdict form which was submitted on the question of manslaughter. In his post-trial motion, defendant asked for a judgment of acquittal on the manslaughter count notwithstanding the verdict of the jury, or, in the alternative, for a new trial. It does not appear that the evidence would be any different on a new trial. This is simply not a manslaughter case on any view of the facts. Therefore, there would be no point in remanding the case for a new trial on that count. The failure of the jury to return any verdict on the murder counts resulted in an acquittal on those counts. People v. Hinkle, 408 Ill 533, 97 NE2d 837 (1951); People v. Schneider, 370 Ill 612, 613, 19 NE2d 748 (1939). Likewise, the finding of guilty on the manslaughter charge amounts to an acquittal on the murder charge. People v. Newman, supra, 360 Ill 226, at 232, 195 NE 645.

Accordingly, the judgment of the lower court will be reversed without remand. Because of the result we have reached, it will not be necessary for us to consider the other assignments of error presented by the defendant.

Reversed.

ABRAHAMSON, P. J. and Davis, J., concur.