THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD CURWICK, Defendant-Appellant.

(No. 74-309;

Third District—November 28, 1975.

James Geis, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee (F. Stewart Merdian, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Donald Curwick appeals from a judgment of the Circuit Court of Kankakee County finding him guilty of voluntary manslaughter. He was convicted in a jury trial and was sentenced to a term of 6 to 20 years in the penitentiary. On appeal in this court defendant contends (1) that the evidence is insufficient to support the conviction of voluntary manslaughter and (2) that the sentence is excessive.

Defendant had been separated from his wife for a number of years and had been living with Patricia Sperry, the deceased, for about 3 years. On January 26, 1973, defendant went to a tavern after work, with his employer, Rusty Morgan, and a coworker. After he had consumed a number of beers, defendant Curwick and one of his coworkers went to another tavern. About 9 P.M. that evening Curwick phoned Patricia Sperry and asked if she would pick him up. She said she could not since the car was not running properly. Defendant denied that there were further conversations, but those who were present in the Sperry home testified that Patricia Sperry then told Curwick that he had better come over and get his clothes and belongings and move out, since she intended to marry his employer, Rusty Morgan, within a few days. These witnesses, including Morgan and some of the daughters of the deceased, Patricia Sperry, testified that after the phone call Patricia Sperry told them that defendant had threatened to kill her. Defendant denied making such statement.

Defendant arrived at the Sperry house some 20 minutes to a half hour after the phone call, by taxicab. He walked into the kitchen, where Patricia Sperry and Morgan were sitting at a table with some of her daughters. Defendant Curwick asked if they really intended to get married. The deceased said "Yes." Morgan admitted to defendant that his relationship with Patricia Sperry had been going on for some time.

Defendant then walked into the living room, looked into a closet and finally went into the bedroom where one of the Sperry girls saw him loading a gun. He went back to the kitchen and asked to speak to Patricia Sperry in the bedroom but she refused to go there. Curwick then returned to the bedroom, but minutes later came back and again asked to talk to Patricia but she again refused. At that point defendant drew the gun from his belt and began shooting, hitting the deceased four times and Morgan twice. Morgan attempted to stop defendant, but the defendant escaped out the back door. Morgan called the police. Patricia Sperry was dead by the time the police arrived.

Although defendant Curwick was indicted for murder, the case also was submitted to the jury on the voluntary manslaughter theory, at the request of defense counsel. Voluntary manslaughter by reason of passion is defined by statute as follows:

"A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under *a sudden and intense passion resulting from serious provocation* by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negli-

gently or accidentally causes the death of the individual killed.

*Serious provocation is conduct sufficient to excite an intense passion in a reasonable person."* (Emphasis added.) Ill. Rev. Stat. 1973, ch. 38, § 9—2(a).

Defense counsel vigorously argued, over strenuous objection from the State, that there was evidence from which the jury could conclude that Curwick shot Patricia Sperry in a fit of passion, provoked by the sudden discovery of her relationship with Morgan and impending marriage. The trial court reluctantly agreed to give the instruction defining the crime of voluntary manslaughter to the jury.

Defendant on appeal now argues (contrary to his argument at the trial) that there is no evidence to show either a "sudden" or an "intense" passion, or "serious provocation" as required by the statute. Provocation is usually restricted to physical assaults, mutual quarrel or combat, adultery and similar situations (*People v. Crews* (1967), 38 Ill.2d 331, 335, 231 N.E.2d 451). While the general rule is that mere words, no matter how aggravating or abusive, could not constitute adequate provocation for the offense of voluntary manslaughter (*People v. Matthews* (3rd Dist. 1974), 21 Ill.App.3d 249, 253, 314 N.E.2d 15), the rule is not absolute and a number of cases have found that situations paralleling those in the instant case, involved a provocation to justify a voluntary manslaughter conviction (*People v. Ahlberg* (3rd Dist. 1973), 13 Ill.App.3d 1038, 1041, 301 N.E.2d 608; *People v. Newberry* (1st Dist. 1970), 127 Ill.App.2d 322, 327, 262 N.E.2d 282). The *Newberry* case was actually argued by counsel for defendant as a precedent for allowing the voluntary manslaughter instruction and the issue to go to the jury.

■■ In the cause before us, it was the defendant who requested that the jury be instructed on the elements of voluntary manslaughter so as to authorize the jury to return such a verdict, if they found that it was warranted by the evidence. If a manslaughter conviction is sought by the State in a murder case, either by a separate count of the indictment or by a prosecution request for an instruction on manslaughter, certainly a defendant on appeal may challenge the sufficiency of the evidence to support a manslaughter conviction. (*People v. Newman* (1935), 360 Ill. 226, 195 N.E. 645; *People v. McMurry* (2nd Dist. 1965), 64 Ill.App.2d 248, 212 N.E.2d 7.) A defendant, however, should not be allowed at the trial level to argue that the jury should be instructed that it could find him guilty of voluntary manslaughter, and thus have that lesser offense before the jury, and then, on appeal (after benefitting from the instruction and argument) assert that the evidence could not support a voluntary manslaughter conviction. While a trial court must instruct the jury

on voluntary manslaughter in a jury trial, if the evidence would support the conviction, it could be error under some conditions for the court to instruct the jury regarding that offense. It is fundamental, however, that a defendant cannot complain of an instruction which is offered by him. (*People v. Riley* (1964), 31 Ill.2d 490, 496, 202 N.E. 531.) In *People v. Clements* (1925), 316 Ill. 282, 284, 147 N.E.2d 99, a defendant contended that it was error to submit the question of manslaughter to the jury at his murder trial, on the assertion that the evidence did not support such an offense. Yet, in that case, it was also the defendant who tendered the manslaughter instruction. The Supreme Court stated:

> "If plaintiff in error was guilty of murder he cannot complain in this case because he was found guilty of manslaughter.  *  *  * [T]he instructions upon the subject of manslaughter were given at the request of the defendants and not of the State. It is a well settled principle of law that a party will not be allowed to take advantage of his own wrong or of an error of the court induced by his own motion. If it was error to instruct the jury upon the question of manslaughter and to submit to the jury the question of plaintiff in error's guilt of the crime of manslaughter, plaintiff in error invited the error, and having done so must accept its results. He cannot ask the court below to make a specific ruling or to proceed in a certain manner and then successfully assign as error in a court of review that the ruling or action of the court is erroneous." 316 Ill. 282, 284.

■■ While we hold that defendant may not contest the sufficiency of the evidence to support the manslaughter conviction after he had requested the instruction on the offense, we do not state that a defendant would be precluded from generally challenging the sufficiency of the evidence to show a homicide. Certainly the fact of a killing and the identity of the killer may be challenged. He could not, however, argue that a "sudden and intense passion resulting from serious provocation," which distinguishes murder from voluntary manslaughter by reason of passion, was not shown by the evidence, after he had successfully taken the opposite position in the trial court, and, therefore, was responsible for having put the voluntary manslaughter issue before the jury in the first instance.

In the *Clements* case to which we have referred, the court simply allowed the defendant to question the sufficiency of the evidence, even though it rebuked his attempt to challenge the giving of the manslaughter instruction. The court in that case simply reviewed the evidence generally to show that there was no question that defendant

participated in a homicide and also that there was no other error on which he could rely for reversal.

Defendant also cites *People v. Towers* (1st Dist. 1974), 17 Ill.App.3d 467, 308 N.E.2d 223, for the proposition that counsel may argue at trial that the evidence shows voluntary manslaughter, and then reverse that position on appeal. That case dealt, however, with the effective assistance of counsel and defendant's trial attorney had virtually conceded that defendant was guilty of voluntary manslaughter at the trial. The court on appeal determined that this was not an unwise approach, given the overwhelming evidence that defendant had committed murder. The court then went on to consider the sufficiency of the evidence. We do not believe this is a precedent for the conclusion asserted by the defendant.

Defendant contends on appeal, also, that his sentence of 6 to 20 years in the penitentiary was excessive. Under the Unified Code of Corrections it is provided that a maximum term of up to 20 years for a Class 2 felony (such as voluntary manslaughter) may be imposed with the exact maximum term in the particular case being largely within the discretion of the court, with a view to the likely period of time required for defendant's rehabilitation. The minimum term for a Class 2 felony is to be 1 year unless the court having regard to the nature and character of the defendant sets a higher minimum term, but should not be more than one-third of the maximum term actually set.

■■ Defendant contends that the sentence imposed was not justified by the nature of the offense or his prior history. He asserts that his prior record (one conviction for burglary 11 years ago, for which he successfully served a term of probation) and his steady employment since he left school at age 16 should have resulted in a lower term. The State responds by pointing out that defendant fired 4 bullets into a defenseless woman, and cites the general proposition that a court of review is reluctant to reduce sentences which are within the statutory limits. Similarly, this court on appeal is reluctant to reduce sentences which are within statutory limits unless such sentences are clearly excessive. (*People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673.) We conclude that the circumstances in the instant case would not justify this court in reducing the sentence imposed by the trial court. *People v. Cole* (3rd Dist. 1974), 23 Ill.App.3d 620, 321 N.E.2d 71.

For the reasons stated, the judgment and the sentence of the Kankakee County Circuit Court are affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.