THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JUAN CARR, Defendant-Appellant.

First District (3rd Division)    No. 78-1324

Opinion filed December 3, 1980.

Sam Adam, Marvin Bloom, and Arnette R. Hubbard, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Michael M. Lorge, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Defendant, Juan Carr, tried in a bench trial on a charge of murdering his estranged wife, was convicted instead of voluntary manslaughter and sentenced to five years' imprisonment.

There were no eyewitnesses to the homicide. The State's evidence established that approximately 2 weeks before the homicide, the defendant told James Webb, a cousin of the victim, that he would kill his wife if she tried to return to their home to remove any furniture. The victim's son found her wounded and lying on the floor of a bedroom in defendant's apartment. Later that day, she died from bullet wounds. Approximately an hour before her son found her in the defendant's apartment, she had a telephone conversation with the defendant, who was then in his apartment. The uncle of the victim testified that on the day of her death she told him she was going home to talk with her husband.

Police Lieutenant Elmer Brown, a watch commander at a district police station, testified that later that day the defendant, accompanied by two relatives, entered the watch commander's office and told the lieutenant that he had shot his wife. One of his relatives then handed a revolver wrapped in a handkerchief to the lieutenant and the defendant said, "This is the gun." Police ballistics tests established that the defendant's gun was the weapon used to kill his wife.

The defense presented 22 character witnesses including several police officers with whom the defendant had worked, three of his childhood friends, a first cousin of the defendant and his dry cleaner.

The defendant, having admitted to police officers at the time he turned himself in that he shot and killed his wife, did not deny the killing. The only defense he offered was insanity. To support this defense he called two psychiatrists. The first (Dr. Michael Reinstein) saw the defendant approximately 2 weeks and again 8 months after the murder. He offered the opinion that the defendant was suffering from an associative psychosis at the time he shot his wife, was not aware of what he was doing and did not appreciate the criminality of his act. The second psychiatrist (Dr. Frank Lorimer), who first saw the defendant more than 11 months after the killing, expressed the opinion that the defendant was suffering at the time of the shooting from a disassociated hysteria, that he

was legally insane when he killed his wife and that the defendant was unable to restrain himself at the time.

Dr. Reinstein, over the State's objection that anything the defendant related to him was hearsay, testified that the defendant told him that the following occurred on the day of the shooting: His wife returned to their home after a 2-week separation and requested that she be allowed to take a couch and a television to her new apartment. An argument ensued during which she told the defendant, "At least now I have a real man." The defendant informed the psychiatrist he was stunned by the remark and reacted by getting his gun and shooting his wife.

Dr. Lorimer also testified that the defendant informed him that the victim told him just prior to the shooting, "Yeah, I got a man, I got a good man." In addition Dr. Lorimer testified that defendant told him of many arguments in the 6 months preceding the shooting, most of them over suspicions of the wife's infidelity. The State also objected on the ground of hearsay to this testimony.

The State called one witness in rebuttal—Dr. Edward Kelleher, a psychiatrist. He expressed the opinion that the defendant was not suffering from disassociative hysteria on the day of the shooting and that he was sane at that time. He also testified that defendant told him that the victim said immediately prior to the shooting, "I have got a man, a good man."

At the conclusion of the testimony, the trial judge received written memoranda on the question of sanity; after hearing closing arguments, he found that the defendant was sane at the time of the shooting. The trial judge then went on to rule that the defendant was guilty of voluntary manslaughter. His explanation was:

> "[T]he State has supported the burden with regard to the sanity of Juan Carr. * * * [T]he evidence all is that the defendant did shoot her, undisputed, and that there was just before this an encounter, some words between them and that * * * there was an immediate intent. * * * But I did find there was immediately prior to the time he shot her some provocation sufficient to incite an intense passion by him, particularly her words that, "I'm leaving you. I'm gone. I've finally got me a real man.' And on that occasion he did shoot her. He is guilty, therefore, of voluntary manslaughter."

The defendant's position in this appeal is that the court's adjudication that although sane he was guilty of voluntary manslaughter was an acquittal of the murder charge, that there was not sufficient competent evidence to establish he was guilty of voluntary manslaughter, and therefore he must be acquitted. He argues that the trial judge should not have relied upon the testimony of any of the three psychiatrists in

determining that the defendant shot his wife after being provoked to a sudden and intense passion.

The defendant contends first that the testimony of the psychiatrists could not be used to establish that just before the defendant shot his wife she told him of her relationship with another man. The use to which the psychiatric testimony could be put was a matter of such skirmishing at the trial. The issue was first raised when the State objected to testimony by Dr. Reinstein and Dr. Lorimer regarding the victim's statement to the defendant. Both objections were on hearsay grounds. The defendant, arguing that both statements had been made to treating physicians, urged that for this reason they were admissible. The State argued that both psychiatrists were examining rather than treating physicians. At the conclusion of the defendant's case, the State moved that the testimony of these two psychiatrists be stricken because they referred to matters not personally known to them. The trial judge ruled he would allow the testimony regarding the defendant's statements to the physicians, but only as evidence of the defendant's state of mind and the basis for the experts' opinions on the issue of sanity.

The defendant's counsel during the course of the trial stated that the limited acceptance of the testimony of Dr. Reinstein and Dr. Lorimer would also, in his view, apply to the defendant's statement to Dr. Kelleher which the State was intending to use in rebuttal. The prosecutor disagreed, and the matter was not referred to again during the progress of the trial. When Dr. Kelleher was called as a rebuttal witness, the defendant registered no objection to his testimony.

The defendant now argues that, the testimony of Dr. Reinstein and Dr. Lorimer having been admitted because of the State's objection only for a limited purpose, the testimony of the State's psychiatrist should be treated the same way even without any objection being presented. But, the testimony of the State's psychiatrist stands on a different footing. Any statement the defendant made to him was not hearsay, but an admission.

Although not stated in the defendant's written motion for a new trial, the defendant at the hearing on that motion informed the court that Dr. Kelleher interviewed the defendant and took statements from him without benefit of *Miranda* warnings and that in any event the defendant's communications to Dr. Kelleher were "privileged." Before this court the defendant persists in his contention that the statement to Dr. Kelleher was inadmissible because of the lack of *Miranda* warnings. In addition he argues that the statement was made under the statutory privilege provided by section 115—6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 115—6), which allows the court to order a psychiatric examination of a defendant but offers a shield to the defendant by

making his statements to the psychiatrists admissible only on the issue of whether he was insane. Finally the defendant urges that the testimony regarding the defendant's statement to Dr. Kelleher should have been excluded because the State never informed the defendant it was going to use the statement.

■■ Thus, the defendant concludes that without Dr. Kelleher's testimony in the record there was no evidence before the trial judge on which he could have based his determination that the defendant was guilty of voluntary manslaughter. But none of these points were raised in the defendant's post-trial motion and they are therefore waived. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) In addition, section 114—11 of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 114—11) requires that a defendant raise the *Miranda* issue before trial in a written motion to suppress. No motion to suppress having been made at any time, either before or during trial, the defendant waived consideration of the *Miranda* issue.

Although in other circumstances we might apply the plain error rule (Ill. Rev. Stat. 1977, ch. 110A, par. 615) to permit consideration of this issue, we do not do so here because no prejudice resulted from the defendant's statements to Dr. Kelleher. On the contrary, the defendant was benefited by those statements, for the court seized upon them to reduce the charge of murder, to which no valid defense had been presented, to manslaughter, a lesser included offense.

■■ We turn next to defendant's reliance on the so-called "privilege" extended by section 115—6 of the Code of Criminal Procedure. In order for the provision on admissibility set forth in that statute to be triggered, it must be invoked. The provision is not a net from which no evidence can escape. The protection of the statute, like the right against self-incrimination on which it is based, can be waived. Where, as here, the defendant did not invoke the statute during the progress of the trial, we must believe his not doing so was dictated by his defense tactics.

■■ In fact, the conduct of the defense clearly discloses such a purpose. Though on appeal the defendant suggests that the case was tried as "murder or nothing," the record discloses that the defense made several attempts to introduce the defendant's statements to psychiatrists without reservation or limitation; had this effort been successful, these statements could have been used by the defendant substantively. These attempts were foiled by the State's hearsay objections, but it is understandable why no objection was raised by the defendant when the State introduced the same statements through Dr. Kelleher. The apparent tactic—to give the trial judge the option of finding the defendant guilty of voluntary manslaughter instead of murder in the event the insanity defense was rejected—worked. Accordingly, as in the case of the failure of Dr.

Kelleher to give *Miranda* warnings, there is no reason to invoke the plain error rule (Ill. Rev. Stat. 1977, ch. 110A, par. 615) to protect the defendant from prejudice resulting from his failure to assert any statutory privilege. The error of using his statements substantively, if error there was, resulted in a boon to the defendant, and he will not now be heard to complain on appeal. *People v. Collins* (1980), 85 Ill. App. 3d 1056, 407 N.E.2d 871.

Finally, there was no prejudice from a discovery violation. Although the State did not disclose its intent to use Dr. Kelleher's statement substantively in its written discovery response, it did make clear to the defense during the discussions of the admissibility of the statements to Dr. Reinstein and Dr. Lorimer that Dr. Kelleher would testify to the defendant's statement. The defense was thus not caught by surprise when the statement was introduced in rebuttal and cannot now complain of prejudice.

■■ As stated by the defense counsel in argument on the post-trial motion, "We could have objected, we could have prevented it from coming in at all. We could have, we did not." With no defense objection, the trial court did not err in considering the defendant's statement introduced through Dr. Kelleher's testimony on the issue of guilt.

■■ Disregarding the availability of Dr. Kelleher's testimony to support the manslaughter conviction, the court was also entitled to rely on the testimony of Dr. Reinstein and Dr. Lorimer, the defense psychiatrists, to mitigate the offense from murder to manslaughter. Although the State successfully limited the use of their testimony by the defendant, nevertheless the defendant offered it without qualification or reservation, thereby waiving any objection on his part to any use made of the testimony by the State. In addition, in their testimony concerning the defendant's conversation with his wife before the shooting, the separation, the arguments and the wife's suspected infidelities, Dr. Reinstein and Dr. Lorimer related the defendant's own statements to them. Once it was introduced by the defendant himself, the State could use this evidence for any purpose as an admission by the defendant.

The defendant next contends that there was insufficient evidence to convict him of voluntary manslaughter. He argues that the record is devoid of evidence showing that he was "acting under a sudden and intense passion resulting from serious provocation by * * * the individual killed" (Ill. Rev. Stat. 1977, ch. 38, par. 9—2). The defendant's statements to any one of the three psychiatrists or to all three of them supply evidence in this case remarkably similar to that held to support conviction in *People v. Ahlberg* (1973), 13 Ill. App. 3d 1038, 301 N.E.2d 608. In each there is a history of ongoing marital discord, a wife absented from the marital home, efforts to remove belongings from the home by the wife, insulting remarks as to the husband's masculinity and the announcement

of adultery by the wife, who claimed to have found a "good man." *Ahlberg* held that this amounted to serious provocation inducing a frenzied state of passion; the court there concluded that the defendant had committed the crime of voluntary manslaughter. (*Ahlberg*, 13 Ill. App. 3d 1038, 1042, 301 N.E.2d 608, 611.) The evidence was therefore proper for the court to consider in this case, and sufficient to support the defendant's conviction here for voluntary manslaughter.

The cases cited by the defendant are inapplicable, since they involve situations where there was no evidence to support a conviction for voluntary manslaughter (see *People v. Thompson* (1973), 11 Ill. App. 3d 752, 297 N.E.2d 592; *People v. Smith* (1973), 16 Ill. App. 3d 553, 306 N.E.2d 606; *People v. Clark* (1973), 15 Ill. App. 3d 756, 305 N.E.2d 218) or do not involve instances of announcements by a spouse of adulterous conduct without a cooling-off period (*People v. Morgan* (1969), 114 Ill. App. 2d 421, 252 N.E.2d 730; *People v. Pecora* (1969), 107 Ill. App. 2d 283, 246 N.E.2d 865).

■■ The defendant's last contention is that the evidence showed him to be insane at the time of the shooting. Once a defendant presents sufficient evidence to raise reasonable doubts as to his sanity at the time of the offense, the State must prove the defendant sane beyond a reasonable doubt. (*People v. Hawkins* (1972), 53 Ill. 2d 181, 290 N.E.2d 231.) It is initially for the trier of fact to determine whether the State satisfied its burden of proof, and its decision will not be disturbed unless against the manifest weight of the evidence. (*People v. Horton* (1975), 29 Ill. App. 3d 704, 331 N.E.2d 104.) The trial court weighed the testimony of the three psychiatrists and was free to accept those opinions it found convincing. The State sufficiently proved the defendant sane beyond a reasonable doubt.

Judgment affirmed.

McNAMARA and RIZZI, JJ., concur.