THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT A. MILLER, Defendant-Appellant.

Third District No. 80-496

Opinion filed May 19, 1981.

Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, of Rock Island, for appellant.

Jeffrey W. O'Connor, State's Attorney, of Cambridge (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Following a bench trial, the defendant, Robert A. Miller, was convicted of murder in violation of section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1)), and was sentenced to

a term of 20 years' imprisonment. The sole issue raised on appeal is whether the State proved the defendant guilty beyond a reasonable doubt. Specifically, the defendant argues that his murder conviction should be reduced to voluntary manslaughter, because his actions were provoked by the verbal conduct of the deceased. In the alternative, he argues that he was provoked by mutual quarrel or combat with the deceased. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a)(1).) We affirm.

The evidence adduced at trial showed that the defendant and Linda Darin, the victim, had lived together in a common-law relationship for approximately six years. They had one daughter who was 4½ years old at the time of the shooting. Two weeks prior to her murder, Miss Darin told the defendant that she no longer wished to live with him. The defendant moved out of their house and lived with a friend during the two-week period. The defendant and Miss Darin discussed the division of their property and agreed that Linda should have custody of their daughter.

The day before the murder, the defendant contacted Miss Darin, and she agreed to meet him at their residence to finish dividing up their property. On the same day, the defendant learned that Miss Darin was seeing another man.

On November 30, 1979, the day of the murder, the defendant arrived at the house before Miss Darin and packed several items in his car, including a shotgun which he placed in a zipper-type bag and shotgun shells which he threw into another bag containing several other items. The shotgun was then placed in the locked trunk of the defendant's car.

A short time later Miss Darin arrived home from her work as an X-ray technician. The couple's daughter accompanied her. The defendant attempted to talk with Miss Darin about a reconciliation, but she rebuffed him. After receiving a telephone call asking her to return to work, Miss Darin left the house and the defendant remained to look after their daughter.

When Miss Darin returned to the house, the defendant again attempted to talk with her concerning their relationship. Miss Darin insisted that she would not remain with the defendant, and both parties became angry and shouted at each other. Miss Darin then entered the back bedroom and made a telephone call. The defendant listened in on an extension and became enraged when he learned that she was speaking to a man. When Miss Darin attempted to take the phone away from the defendant, both parties pushed and shoved each other.

The defendant then left the house dressed in jeans and socks and remained outside long enough to remove the shotgun from the locked trunk of his car, load and cock it. He returned to the house with the gun, followed Miss Darin into their daughter's bedroom where he left the gun, and resumed the argument. He became upset and went into the bathroom

to cry. When he came out of the bathroom, he heard Miss Darin talking on the telephone. Miss Darin had called her sister, who was at work, and expressed to her fear and apprehension. Her sister became alarmed and called the police. Miss Darin refused to tell the defendant with whom she had been speaking. She pushed past the defendant and began to run. He tackled her and then retrieved the shotgun. A few more words were exchanged, and the defendant then shot Miss Darin, firing three rounds into her.

The police were on hand to hear the shots, having responded to the telephone call placed by Miss Darin's sister. They ordered the defendant to come out of the house, which he did, offering no resistance. At trial the defendant testified that he did not remember the actual shooting.

The defendant contends that this evidence was sufficient to prove the provocation necessary to reduce his conviction from murder to voluntary manslaughter. We disagree.

■■■ It is fundamental that where there is conflicting evidence, it is for the trier of fact to determine whether a homicide is murder or manslaughter. (*People v. Evans* (1981), 92 Ill. App. 3d 874, 416 N.E.2d 377.) A reviewing court will not reverse the trial court's findings of fact unless they are so improbable as to raise a reasonable doubt as to the guilt of the defendant. *People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331.

■■ In the case at bar, we find no reason to disturb the trial court's determination that no serious provocation occurred to reduce the offense from murder to voluntary manslaughter. The provocation necessary to reduce murder to the lesser included offense of voluntary manslaughter is characterized as follows: (1) substantial physical injury or assault; (2) mutual quarrel or combat; (3) illegal arrest; and (4) adultery with the offender's spouse. (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451; *People v. Causey* (1978), 66 Ill. App. 3d 12, 383 N.E.2d 234.) Mere words are not considered sufficient provocation when a deadly weapon is involved, nor may one who initiates a combat rely on the dispute to mitigate his offense from murder to manslaughter. *People v. Causey.*

In *People v. Matthews* (1974), 21 Ill. App. 3d 249, 253, 314 N.E.2d 15, 18, this court explored the question of provocation arising from words and mutual combat. We deem the following quotation from *Matthews* applicable to the case at bar:

> "Passion on the part of the slayer, no matter how violent will not relieve him from liability for murder unless it is engendered by a provocation which the law recognizes as being reasonable and adequate. If the provocation is not sufficient the crime is murder. It is the general rule that language, however aggravated, abusive, opprobrious, or indecent, is not sufficient provocation to reduce a killing committed with a deadly weapon from murder to man-

slaughter. (People v. Marrow, 403 Ill. 69; People v. McMurry, 64 Ill. App. 2d 248.) The rule does not apply where as a result of insulting or opprobrious words, the parties become suddenly heated, and engage in a mutual combat, *fighting on equal terms*, and death results from the combat. 40 Am.Jur.2d *Homicide* sec. 64.

The term mutual combat has been defined as one into which both parties enter willingly, or in which two persons, upon a sudden quarrel, and in hot blood, mutually fight upon equal terms. 15 C.J.S. p. 358.

A slight provocation will not be adequate since the provocation must be proportionate to the manner in which the accused retaliated and therefore if accused on a slight provocation attacked deceased with violence out of all proportion to the provocation and killed him the crime is murder. This is especially true if the homicide was committed with a deadly weapon. See 40 C.J.S. *Homicide* sec. 46, p. 908; Wharton's Criminal Law and Procedure (1957), sec. 276."

■■ The record in the instant case fails to indicate sufficient provocation to reduce the homicide from murder to voluntary manslaughter. The words shouted between the parties were insufficient, and the limited degree of shoving and pushing does not amount to the type of mutual combat, on equal terms, needed to indicate sufficient provocation. (*People v. Seaberry* (1978), 63 Ill. App. 3d 718, 380 N.E.2d 511.) Furthermore, the defendant's actions in removing the shotgun from its zippered case in his locked trunk, loading and cocking it bespeak deliberation and malice indicative of the *mens rea* necessary for a murder conviction.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Henry County.

Affirmed.

ALLOY and STOUDER, JJ., concur.