THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BILLIE GENE HIGHTOWER, Defendant-Appellee.

Fifth District   No. 5—92—0818

Opinion filed March 1, 1994.

CHAPMAN, J., specially concurring.

Charles Garnati, State's Attorney, of Marion (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

518

William A. Schroeder, of Southern Illinois University, of Carbondale, and Brocton Lockwood, of Marion, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Because the facts of this case have been detailed in two previous opinions by this court (see *People v. Hightower* (1992), 233 Ill. App. 3d 188, 598 N.E.2d 482 (*Hightower II*); *People v. Hightower* (1988), 172 Ill. App. 3d 678, 526 N.E.2d 1129 (*Hightower I*)), we will only briefly restate the operative facts. On June 9, 1986, Billie Gene Hightower (defendant) was convicted in the circuit court of Williamson County of murdering his wife, Cathy Hightower. The defendant was sentenced to 25 years in prison. Following the affirmance of defendant's conviction and sentence in *Hightower I*, defendant filed a post-conviction petition alleging, *inter alia*, that the trial court erred in refusing to give his tendered voluntary manslaughter instruction based on provocation, and that his attorney's failure to raise the issue on direct appeal constituted ineffective assistance of counsel. On November 13, 1990, the circuit court granted the post-conviction petition and ordered that defendant file a notice of direct appeal. Defendant thereafter prepared and filed what was purported to be a notice of direct appeal from his original conviction.

On July 11, 1991, this court ordered, *inter alia*, that: (1) defendant's November 13, 1990, notice of appeal be stricken; and (2) defendant's appeal be based only upon the filing of the late notice of appeal from the circuit court's November 13, 1990, order and the post-conviction proceedings. On July 12, 1991, the defendant filed his late notice of appeal from the circuit court's November 13, 1990, order in the post-conviction proceeding. On August 20, 1992, this court in *Hightower II*: (1) held that the post-conviction hearing judge was without authority to order a new appeal; (2) vacated the trial court's rulings on the defendant's post-conviction petition; and (3) remanded the case "to the circuit court for a proper determination on the merits of the defendant's claim of ineffective assistance of counsel." (*Hightower II*, 233 Ill. App. 3d at 192, 598 N.E.2d at 484.) On November 23, 1992, the post-conviction court found that the defendant was denied the effective assistance of counsel and therefore entered an order granting the defendant a new trial. The State now appeals and raises the following issue: whether the post-conviction court erred as a matter of law in finding appellate counsel on direct appeal ineffective for failing to challenge the trial court's refusal of a voluntary manslaughter instruction.

In order to demonstrate that appellate counsel was ineffective for failing to raise a particular issue, a defendant must show two

things: (1) that appellate counsel's failure to raise the issue was *objectively unreasonable;* and (2) that as a result of the failure there was a *reasonable probability* that the conviction would have been reversed. (*People v. Caballero* (1989), 126 Ill. 2d 248, 269, 533 N.E.2d 1089, 1096.) The undergirding for this two-pronged test was first articulated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and subsequently adopted by our supreme court in *Caballero* as the appropriate standard for resolving ineffective assistance of appellate counsel claims.

Using this standard, the post-conviction court in the instant case entered the following order:

"At the time of the original appeal, there was a line of cases, subsequently disapproved by the Supreme Court in *People v. Chevalier* (1989), 131 Ill. 2d 66, [544 N.E.2d 942,] recognizing that the breakup of a marital relationship and words informing a spouse of adultery could be a sufficient basis to instruct a jury on provocation, so as to reduce murder to voluntary manslaughter.

Here, as elaborated on in this Court's original order ruling on the post-conviction petition, there was evidence, including testimony from the State's own psychiatrist, which raised the issue of provocation. The trial judge's articulated reason for refusing the instruction was at least arguably wrong.

Given the state of the case law at the time the appeal was taken, appellate counsel's failure to raise the issue was objectively unreasonable. There was a reasonable possibility that, had it been raised, the defendant would have been granted a new trial. To speculate that the appellate court would have anticipated *Chevalier* does not seem appropriate. Surely this issue, raised in the post-trial motion, should have been pursued on appeal. The failure to do so amounts to deprivation of the defendant's constitutional right to the effective assistance of counsel on appeal."

The appropriate standard of review to be applied in this case is whether the post-conviction court's determination is manifestly erroneous. (*People v. Silagy* (1987), 116 Ill. 2d 357, 365, 507 N.E.2d 830, 832.) The term "manifest error" has been interpreted to mean error which is clearly evident, plain, and indisputable. (*People v. Green* (1991), 218 Ill. App. 3d 71, 75, 578 N.E.2d 169, 172.) Applying this standard to the instant case, we find that the post-conviction court's determination that the defendant was denied the effective assistance of counsel is manifestly erroneous. The controlling question before this court is the correctness of the post-conviction court's conclusion, not the validity of its rationale or reasoning. (*People v.*

*Johnson* (1992), 231 Ill. App. 3d 412, 419, 595 N.E.2d 1381, 1386; *People v. Dyer* (1986), 141 Ill. App. 3d 326, 332, 490 N.E.2d 237, 241.) It is our opinion that the post-conviction court erred in finding appellate counsel on direct appeal ineffective for failing to challenge the trial court's refusal to give a voluntary manslaughter instruction. To reach this conclusion, we must ascertain whether: (1) appellate counsel's decision not to pursue the issue on appeal was *objectively unreasonable*; and (2) there was a *reasonable probability* that the conviction would have been reversed had the issue been pursued. *Caballero*, 126 Ill. 2d at 269, 533 N.E.2d at 1096.

We start from the premise advanced by the State: if there was no error in the trial court's refusal to give the voluntary manslaughter instruction, then it follows, *a fortiori*, that appellate counsel's decision not to raise the issue on direct appeal was reasonable. In other words, if the trial court properly denied the voluntary manslaughter instruction, then appellate counsel's decision not to pursue the issue on appeal was not objectively unreasonable. Without a showing of objective unreasonableness, it cannot be said that the defendant was deprived of a reasonable probability of reversal. In order to resolve this question, we must go back in time and look at the law as it existed in 1986 (time of conviction) and 1988 (time of direct appeal).

> "Passion on the part of the slayer, no matter how violent[,] will not relieve him from liability for murder unless it is engendered by a provocation which the law recognizes as being reasonable and adequate. If the provocation is not sufficient[,] the crime is murder." (*People v. Matthews* (1974), 21 Ill. App. 3d 249, 253, 314 N.E.2d 15, 18.)

Under section 9—2(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)(1)), a person commits voluntary manslaughter "if at the time of the killing he is acting under a sudden and intense passion resulting from *serious provocation* by: [t]he individual killed." (Emphasis added.) Serious provocation is defined as "conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a).) In the committee comments to this statute, it is noted:

> "The definition and various recognized categories of 'serious provocation' appear to have remained in much the same form as under the common law. The test is that of the reasonable man, and only a few categories of provocation have been recognized— substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but not mere words or gestures or trespass to property." (Ill. Ann. Stat., ch. 38, par. 9—2, Committee Comments, at 393 (Smith-Hurd 1979).)

In *People v. Crews* (1967), 38 Ill. 2d 331, 335, 231 N.E.2d 451, 453, our supreme court stated that the *only* recognized categories of serious provocation were those listed in the committee comments, *i.e.*, physical injury/assault, mutual combat/quarrel, illegal arrest, and adultery with the offender's spouse. (See Ill. Ann. Stat., ch. 38, par. 9—2, Committee Comments, at 393-94 (Smith-Hurd 1979) (citing cases pertaining to the four recognized categories of serious provocation).) Numerous cases after *Crews* continued to adhere to the four categories of serious provocation outlined in the committee comments. See, *e.g.*, *People v. Fausz* (1983), 95 Ill. 2d 535, 539, 449 N.E.2d 78, 80; *People v. Miller* (1981), 96 Ill. App. 3d 212, 214, 421 N.E.2d 406, 408; *People v. Strong* (1979), 79 Ill. App. 3d 17, 24, 398 N.E.2d 216, 222; *People v. Hammock* (1979), 68 Ill. App. 3d 34, 39, 385 N.E.2d 796, 801.

We begin by noting, as does the defendant, that "if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter, a manslaughter instruction tendered by defendant must be given." (*People v. Mocaby* (1990), 194 Ill. App. 3d 441, 448, 551 N.E.2d 673, 678.) A review of the case law shows plainly enough that "even a slight amount of evidence [of manslaughter] will raise the issue and justify the instruction." (*Mocaby*, 194 Ill. App. 3d at 449, 551 N.E.2d at 678.) The defendant argues in the case at hand that evidence from "several sources" would have supported a manslaughter instruction.

First, defendant asserts that because "he was drunk at the time he killed his wife \*\*\*, [t]he jury should have been given the opportunity to consider defendant's intoxication as a factor bearing on whether he committed the *intentional crime of murder*." (Emphasis added.) This argument is without merit given the fact that defendant *did* receive the benefit of an intoxication instruction at trial. The jury obviously rejected defendant's intoxication defense. Furthermore, defendant has cited no case, nor can we find one, holding that evidence of intoxication is sufficient to warrant the giving of a voluntary manslaughter instruction based on provocation.

The defendant next asserts that "there was evidence that the killing occurred as the Hightowers' marriage was breaking up." Relying on *People v. Wesley* (1978), 65 Ill. App. 3d 25, 31, 382 N.E.2d 358, 362, which held that "the breakup of a marital-type relationship is a type of situation which can give rise to sudden and intense passions," defendant argues that "[i]f the break-up [*sic*] of a marital type relationship is sufficient to support a manslaughter instruction, then surely the breakup of a marriage should support such an instruction." We disagree on several fronts. First, although the breakup of a marriage often causes intense emotional pain, it simply

is not a recognized category of sufficient provocation under the law of this State. Our supreme court has stated with clarity what constitutes sufficient provocation. (See *Crews*, 38 Ill. 2d at 335, 231 N.E.2d at 453.) The breakup of a marriage is not one of the four recognized categories of sufficient provocation. Second, the only support in *Wesley* for this erroneous departure from the clearly recognized categories of sufficient provocation is a line of cases created by the appellate court out of whole cloth to fit the exigencies of the cases before them. (See *Wesley*, 65 Ill. App. 3d at 31, 382 N.E.2d at 362 (citing *People v. Curwick* (1975), 33 Ill. App. 3d 757, 338 N.E.2d 468; *People v. Ahlberg* (1973), 13 Ill. App. 3d 1038, 301 N.E.2d 608; *People v. Newberry* (1970), 127 Ill. App. 2d 322, 262 N.E.2d 282).) It is worth noting that in *Wesley* there was also evidence of mutual quarrel or combat. And in *People v. McCarthy* (1989), 181 Ill. App. 3d 208, 536 N.E.2d 917, *rev'd* (1989), 132 Ill. 2d 331, 547 N.E.2d 459, a case which followed *Wesley*, there was, in addition to the breakup of a "marital-type" relationship, evidence that the defendant had caught his "wife" in bed with another man. In any event, our review of the law demonstrates that the mere breakup of a marriage does not warrant the giving of a voluntary manslaughter instruction. In *People v. Chevalier* (1989), 131 Ill. 2d 66, 75, 544 N.E.2d 942, 945, the supreme court properly criticized cases like *Ahlberg* that, without any explanation, considered a history of marital discord as a factor favoring a voluntary manslaughter instruction.

The defendant's final argument on appeal is structured as follows. First, defendant asserts: "[T]here was evidence that prior to the shooting [defendant's] wife had humiliated him by openly engaging in adulterous behavior. Adultery with an offender's spouse is a provocation recognized by the Illinois courts as sufficient to render a homicide manslaughter." The defendant then goes on to state that "[w]hether there was sufficient time for [his] passions to cool after he learned of his wife's adultery was a question for the jury." Although the defendant is correct that adultery is a recognized category of sufficient provocation in Illinois, that category generally "has been limited to those instances where the parties are discovered in the act of adultery or immediately before or after such an act, and the killing immediately follows such discovery." (*People v. Chevalier* (1989), 131 Ill. 2d 66, 72, 544 N.E.2d 942, 944 (citing cases); see also *People v. Jenkins* (1975), 30 Ill. App. 3d 1034, 1038, 333 N.E.2d 497, 501.) Furthermore, it has been long held that mere words—no matter how provoking, insulting, abusive, opprobrious, or indecent—are insufficient provocation to excite a reasonable person so as to reduce the crime of murder to manslaughter. See, *e.g.*, *People v. Washington*

(1963), 27 Ill. 2d 104, 109, 187 N.E.2d 739, 741; *People v. Russell* (1926), 322 Ill. 295, 301, 153 N.E. 389, 391; *People v. Neal* (1983), 112 Ill. App. 3d 964, 967, 446 N.E.2d 270, 273; *People v. Hall* (1975), 25 Ill. App. 3d 992, 1002, 324 N.E.2d 50, 58; *People v. Matthews* (1974), 21 Ill. App. 3d 249, 253, 314 N.E.2d 15, 18.

Notwithstanding the long-established case law regarding adultery and verbal communications discussed above, the defendant, in arguing to the post-conviction court that he was entitled to a voluntary manslaughter instruction, relied on a line of cases that improperly created an exception to the general rule that verbal communications of adultery are insufficient provocation. Under this exception, a verbal admission of adultery by a spouse coupled with other circumstances *might* constitute legally sufficient provocation. (See, *e.g., People v. Ambro* (1987), 153 Ill. App. 3d 1, 505 N.E.2d 381; *People v. Carr* (1980), 91 Ill. App. 3d 512, 414 N.E.2d 1108; *People v. Ahlberg* (1973), 13 Ill. App. 3d 1038, 301 N.E.2d 608.) In 1989, approximately 10 months after the defendant's direct appeal in *Hightower I*, the *Ahlberg* line of cases was overruled by our supreme court in *People v. Chevalier* (1989), 131 Ill. 2d 66, 544 N.E.2d 942. However, we want to make it clear that we are not relying on *Chevalier* in any way to reach the result we reach today, because appellate counsel could not have foreseen this decision. Instead, we will examine the law as it existed prior to the supreme court's decision in *Chevalier*.

Before turning to the merits of defendant's argument, we first examine those cases upon which the exception was built. The genesis for this illegitimate exception came in *People v. Ahlberg* (1973), 13 Ill. App. 3d 1038, 301 N.E.2d 608. In *Ahlberg*, the defendant was charged with murder but found guilty of voluntary manslaughter. On appeal, the defendant argued that he was not guilty of voluntary manslaughter because there was no evidence of any legally recognized provocation. It was defendant's position that he was either guilty of murder or not guilty by reason of insanity. The court in *Ahlberg* disagreed and stated, "There is ample evidence in the record to support a finding that the defendant was acting under a sudden and intense passion when he [killed his wife]." (*Ahlberg*, 13 Ill. App. 3d at 1040, 301 N.E.2d at 610.) The "ample evidence" relied upon by the *Ahlberg* court was, *inter alia*, defendant's own testimony that his wife had stated that: (1) he had never satisfied her sexually; (2) she had found an older man who could love her; (3) she was tired of being the "nice schoolteacher's wife"; and (4) she was going to get a divorce. On the surface, the court in *Ahlberg* had an important motivating reason for holding the way it did:

"We are inclined to believe that had the defendant been convicted of murder he would now be before us asking that his crime be reduced to voluntary manslaughter. Having escaped a guilty of murder conviction he now asks that we set aside a voluntary manslaughter conviction even though by his testimony the words of his wife were such as to cause him to lose all control of himself including his memory. *To grant the request of the defendant would make a mockery of the law.* Set rules, formulas and standards are strongly embedded in our legal system but no more so than logic and common sense. To follow unequivocally the rule that [mere words are insufficient provocation] *would be in keeping with precedent and an established rule; however, it would be a direct refutation of logic and a miscarriage of justice.*" (Emphasis added.) (*Ahlberg*, 13 Ill. App. 3d at 1041, 301 N.E.2d at 610-11.)

The *Ahlberg* court explicitly stated that it was breaking rank and departing from the established law of Illinois when it created an exception for verbal admissions of adultery coupled with other conduct.

The next link in the chain of cases establishing the exception relied upon by the defendant is *People v. Carr* (1980), 91 Ill. App. 3d 512, 414 N.E.2d 1108, a case that closely paralleled *Ahlberg*. In *Carr*, the defendant, who was convicted of voluntary manslaughter (and thus acquitted of murder), appealed his conviction arguing that, because there was insufficient evidence of voluntary manslaughter, he must be acquitted. The court in *Carr*, noting that the evidence was "remarkably similar to that held to support conviction" in *Ahlberg*, observed that Carr's deceased wife had, *inter alia*, made "insulting remarks as to the husband's masculinity" and had announced her adultery by claiming "to have found a 'good man.'" (*Carr*, 91 Ill. App. 3d at 517-18, 414 N.E.2d at 1112.) The *Carr* court concluded by finding that the evidence was sufficient to support a voluntary manslaughter conviction.

Finally, in *People v. Ambro* (1987), 153 Ill. App. 3d 1, 505 N.E.2d 381, the defendant was convicted of murdering his wife, and he appealed on the grounds that the trial court erred in refusing to instruct the jury on voluntary manslaughter based on provocation. The *Ambro* court began by correctly noting the law of provocation but then stated that "[a]n *apparent exception* to these general rules" had been recognized in *Ahlberg* and *Carr*. (Emphasis added.) (*Ambro*, 153 Ill. App. 3d at 5, 505 N.E.2d at 383-84.) The court then examined the evidence which showed, *inter alia*:

"On the evening of the killing, *** the wife implied that defendant was not the father of her children, called him an alcoholic, and told him she was going to take the children when she left

him. When defendant knelt beside his wife and asked how he could restore their relationship, she informed him of her adultery and then goaded him to kill her." (*Ambro*, 153 Ill. App. 3d at 6, 505 N.E.2d at 384.)

According to the *Ambro* court, these facts not only paralleled those in *Ahlberg* and *Carr* but "[went] beyond the provocative elements in those cases, since the victim [had] goaded defendant to kill her." (*Ambro*, 153 Ill. App. 3d at 6, 505 N.E.2d at 384.) The *Ambro* decision, however, was not unanimous. In dissent, Presiding Justice Lindberg rejected the majority's reliance on *Ahlberg* and *Carr* and also correctly noted that the words uttered by the victim did not come within the adultery standard "so as to be legally recognized as 'serious provocation' as defined by our supreme court." *Ambro*, 153 Ill. App. 3d at 9, 505 N.E.2d at 386 (Lindberg, P.J., concurring in part and dissenting in part).

*Ambro*, a second district decision, was followed in two subsequent second district opinions also cited by the defendant. See *People v. Flores* (1988), 168 Ill. App. 3d 636, 522 N.E.2d 876, *rev'd* (1989), 131 Ill. 2d 66, 544 N.E.2d 942; *People v. Chevalier* (1988), 167 Ill. App. 3d 790, 521 N.E.2d 1256, *rev'd* (1989), 131 Ill. 2d 66, 544 N.E.2d 942.

Relying on the exception created by *Ahlberg* and its progeny, the defendant argues:

"In 1986, when the defendant's case was tried, *Ahlberg* and *Carr were the received law of this state.* The trial court was *required* to follow that law. The trial judge had no means of knowing that three years later, in [*Chevalier*], the Illinois Supreme Court would state that *Ahlberg* and cases like it were wrongly decided. A trial judge can look only to the available sources. He cannot base his instructions on speculation that the Illinois Supreme Court will, at some future date, without warning, overrule and reject *a line of cases* \*\*\* *that have remained unquestioned for 16 years.* The trial judge should have given a manslaughter instruction because every legal authority available to him would have told him that this was the proper course under Illinois law." (Emphasis added.)

Defendant, however, both misstates and overstates the law. We disagree that *Ahlberg* represented the "received law" of Illinois. Quite the contrary, the *Ahlberg* court explicitly acknowledged that it was deviating from established law (*i.e.*, the received law) in order to prevent a miscarriage of justice. Furthermore, the court in *Ambro* characterized *Ahlberg* and *Carr* as recognizing an apparent exception to the general rules. Still further, at the time of defendant's direct appeal, the majority of reported cases addressing the subject of legally sufficient provocation rejected the proposition that mere words could constitute serious provocation. See, *e.g.*, *People v. Simpson* (1978), 74

Ill. 2d 497, 502, 384 N.E.2d 373, 375; *Crews*, 38 Ill. 2d at 335, 231 N.E.2d at 453; *People v. Harris* (1984), 123 Ill. App. 3d 899, 905, 463 N.E.2d 1030, 1034-35.

In short, *Ahlberg* and its progeny constitute a house of cards with no valid foundation. Consequently, the trial court was not required to follow *Ahlberg*. Additionally, we note that *Ahlberg* and its progeny did not remain "unquestioned for 16 years." (See *Ambro*, 153 Ill. App. 3d at 8-10, 505 N.E.2d at 386-87 (Lindberg, P.J., concurring in part and dissenting in part); *People v. Harris* (1984), 123 Ill. App. 3d 899, 905-06, 463 N.E.2d 1030, 1034-35.) As is clear from our lengthy discussion earlier in this opinion, the law regarding legally recognized sufficient provocation was clear both before and after *Ahlberg* was decided. (See, *e.g.*, *People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78; *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451; *People v. Washington* (1963), 27 Ill. 2d 104, 187 N.E.2d 739; *People v. Neal* (1983), 112 Ill. App. 3d 964, 446 N.E.2d 270; *People v. Miller* (1981), 96 Ill. App. 3d 212, 421 N.E.2d 406; *People v. Jenkins* (1975), 30 Ill. App. 3d 1034, 333 N.E.2d 497; *People v. Hall* (1975), 25 Ill. App. 3d 992, 324 N.E.2d 50; *People v. Matthews* (1974), 21 Ill. App. 3d 249, 314 N.E.2d 15; *People v. Wax* (1966), 75 Ill. App. 2d 163, 220 N.E.2d 600.) We therefore agree with the State's argument:

"[I]t is difficult to understand how defendant could seriously maintain, and how the court below could agree, that *Ahlberg* and *Carr* represented 'the received law of this State' on the voluntary manslaughter instruction issue which arose at the time of defendant's trial. It is equally difficult to see how the appellate court's decisions in *Ambro, Flores*, and *Chevalier* could be characterized as 'the received law of this State' at the time of defendant's direct appeal. The extension, in those cases, of legally sufficient provocation to include admissions of adultery drew the unqualified support of five justices from one district of the appellate court for a period slightly in excess of one year. The view expressed in those cases was not the prevailing view in the State prior to that period, it did not command a state-wide following during that period, and it was promptly rejected as 'incorrect' by the supreme court."

Perhaps most importantly, the instant case is distinguishable from *Ahlberg* and its progeny. The common threads running through the *Ahlberg* line of cases are comments, made by the wife immediately prior to the killing, disparaging defendant's manhood or sexual performance, admitting adultery, and in *Ambro*, goading the defendant to kill her. Thus, even assuming such remarks temporarily constituted sufficient provocation under a few appellate court cases, the defendant in the case at bar was still not entitled to a voluntary man-

slaughter instruction because the evidence at trial failed to show the content of the remark that supposedly "tripped" the defendant off. This factual distinction can hardly be cast aside as irrelevant.

According to the defendant, although this unknown remark "provoked" him to kill his wife, "the precise content of the final insult is irrelevant" because "the evidence permits an inference that his wife's provocative behavior was brought suddenly to mind." We disagree. Under defendant's view, even the slightest provocation (without regard to content) suffices so long as the defendant testifies that the deceased's words provoked intense passion. This cannot, as the State notes, be a correct view because it makes the existence of provocation entirely a subjective question. The difficulty with defendant's position, that "the precise content of the final insult is irrelevant," is that such a position completely ignores the statutory requirement that serious provocation must be "*conduct* sufficient to incite an intense passion in a *reasonable [man]*." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a).) As the State succinctly argues:

> "In order to justify a voluntary manslaughter instruction, there must [be] *objective* evidence of serious provocation. *People v. Simpson* [(1978), 57 Ill. App. 3d 442, 448, 373 N.E.2d 809, 813, *aff'd* (1978), 74 Ill. 2d 497, 384 N.E.2d 373]. The *Ambro* line did not reject this principle. It merely added to the categories of recognized provocation a spouse's utterance of words having very specific subject matter. Not just any words will do to bring the facts of a given case under the holdings in *Ambro* and those cases following it. The content of the final insult is far from irrelevant under *Ambro*; it is of critical significance."

■ Having carefully reviewed the law and arguments of the parties, we conclude that it was proper for the trial court to refuse the voluntary manslaughter instruction because the law at the time of trial (and on appeal) would not have supported the giving of a voluntary manslaughter instruction. Likewise, the trial court was not required to follow *Ahlberg*. As a result, appellate counsel was not deficient in failing to raise the issue on appeal. In other words, it was not objectively unreasonable for appellate counsel to forgo pursing the issue on appeal. Furthermore, had appellate counsel argued the voluntary manslaughter issue on appeal, the likely outcome would have been refusal to follow *Ahlberg* and its progeny for two reasons. First, this court would have had to abandon the clearly established law of this State regarding provocation. Second, this court would have had to ignore the important differences between this case and the *Ahlberg* line of cases. There is not a reasonable probability that

appellate counsel could have cleared either or both of these very tall hurdles. Under *Caballero*:

"Where the defendant maintains \*\*\* that his appellate attorney failed to argue a particular issue, he must show [that] the failure to raise that issue was objectively unreasonable, as well as a reasonable probability that, but for this failure, his sentence or conviction would have been reversed." (*Caballero*, 126 Ill. 2d at 270, 553 N.E.2d at 1096.)

A reasonable probability is defined as " 'a probability sufficient to undermine confidence in the outcome.' " (*People v. Stewart* (1990), 141 Ill. 2d 107, 119, 565 N.E.2d 968, 973, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 693-94, 80 L. Ed. 2d 674, 697-98, 104 S. Ct. 2052, 2067-68.) Because the defendant does not, in our opinion, satisfy *Caballero*, we find that he was not denied the effective assistance of counsel. Therefore, the post-conviction court's decision was manifestly erroneous.

For the foregoing reasons, we reverse the post-conviction court's determination that defendant received ineffective assistance of counsel, and we reverse the judgment granting a new trial.

Reversed.

MAAG, J., concurs.

JUSTICE CHAPMAN, specially concurring:

I concur with the result reached by the majority, but my concurrence is based on different reasoning.

I see little reason for counsel on direct appeal not raising the trial court's refusal to give the voluntary manslaughter instruction, and for the purposes of my analysis, I will assume that the failure constituted ineffective assistance and satisfied the first prong of *Strickland*. I will also assume, contrary to the majority, that this court would have followed *Ahlberg* and its progeny. If the majority is correct that this court would have rejected *Ahlberg*, then the majority is also correct that the defendant could not meet the second prong of *Strickland* at the appellate court level. If I assume that appellate counsel should have raised the issue and that this court would have resolved the issue in defendant's favor, then I must also assume that the State would have filed a petition for leave to appeal from our decision. There is little doubt that the supreme court would have granted the petition, a statement which is supported by the fact that it granted the State's petition in *People v. Chevalier* (1988), 167 Ill. App. 3d 790, 521 N.E.2d 1256, *rev'd* (1989), 131 Ill. 2d 66, 544 N.E.2d

942, which was decided less than four months before *Hightower I.* There is also little doubt of the result. The supreme court would have reversed our assumed ruling in defendant's favor, which means that defendant is still unable to meet *Strickland*'s second requirement. Therefore, I concur with the result reached by the majority.